CLAUDE WOODRING, PLAINTIFF
v.
ANGELA WOODRING, DEFENDANT

No. COA12-679

Filed 4 June 2013

1.  **Child Custody and Support—temporary and permanent orders—determination**

    The trial court erred in a child custody and visitation case by not mentioning the latest permanent custody order (14 July 2011) in its modification order, and instead mistakenly using another order. The order relied on by the court as the last permanent order (14 June 2010) was in fact temporary because it did not determine all of the issues, and it did not become permanent by the operation of time because a hearing was set within a reasonable time and the order did not set an ongoing visitation schedule. The ensuing 14 July 2011 order was permanent because it was not entered without prejudice to either party, did not state a clear and specific reconvening time, and determined all of the issues by determining custody and setting an ongoing visitation schedule.

**2.  Child Custody and Support—visitation--findings—res judicata**

Findings in an order that modified child custody and visitation were *res judicata* and improperly considered to the extent that they contained information disclosed to the court before a hearing on 8 July 2011, which resulted in a permanent order. When evaluating whether there has been a substantial change in circumstances, courts may only consider events which occurred after the entry of the previous order, unless the events were previously undisclosed to the court.

**3.  Child Visitation—authority to determine and supervise**

The trial court erred in a child custody and visitation action by granting the custodial parent the exclusive authority to decide when, where, and if the non-custodial parent had visitation, as well as the supervision of visitation.

Appeal by defendant from orders entered 8 September 2011 and 8 February 2012 by Judge Thomas M. Brittain, Jr. in Henderson County District Court. Heard in the Court of Appeals 7 January 2013.

*No brief, for plaintiff–appellee.*

*Arlaine Rockey, for defendant–appellant.*

MARTIN, Chief Judge.

According to the limited record on appeal before us, defendant Angela Woodring ("mother") and plaintiff Claude Woodring ("father"), having been married, separated on or about 15 January 2010, when mother took their two minor children—T.M.W. and C.E.W.—with her to Missouri. At the time of the separation, the minor children were ages fourteen and ten, respectively. Less than a week later, father filed an action in North Carolina seeking primary physical and legal custody of the minor children. On 14 June 2010, the parties entered a temporary consent order which, among other things, granted father visitation on three specific dates in 2010 and provided the children were "to be with the mother except for those times in this Order when they are with the father."

After the three scheduled visitations, it appears from the record the parties handled ongoing visitation in an *ad hoc* fashion, with an additional court-ordered overnight visitation scheduled for December 2010. However, mother failed to deliver the minor children to father for the

visitation. After finding mother in contempt, the court ordered same-day visitation between father and the minor children in February 2011.

With a permanent custody hearing set for 12 July 2011, father made a 31 May 2011 "Motion for Visitation," requesting to see the minor children on the days before the scheduled permanent custody hearing. The motion was calendared and continued twice, the second time because mother had car trouble. On 5 July 2011, mother allegedly prepared a voluntary dismissal of father's claims, had C.E.W. sign the dismissal, and filed it. The next day, father filed a motion to strike the voluntary dismissal, to reinstate his claim, and for sanctions and attorney's fees pursuant to N.C.G.S. § 1A-1, Rule 11.

A hearing was held on 8 July 2011. Mother was not present at the hearing, but was represented by counsel. The trial court allowed father's motion to strike the dismissal and reinstated his claim, but delayed ruling on the Rule 11 portion of the motion, pending a criminal investigation into the matter. Mother's motion to continue was denied and the court took testimony concerning father's "Motion for Visitation." The trial court expressed frustration that the parties were dealing with each visitation one hearing at a time, rather than setting a schedule for visitation. In an effort to address the issue, the court interpreted the temporary order as granting "primary physical custody to [mother, and] joint legal custody to the parties"——even though the order did not explicitly state such. The court determined the temporary consent order had, by operation of time, become a permanent custody order, but that "the issue of visitation on an ongoing basis need[ed] to be addressed by [the court.]" The court also noted that since the temporary order did not address ongoing visitation, father would not have to show a change of circumstances from the temporary order, but rather "address the best interest of the children in establishing an ongoing visitation schedule . . . ."

After hearing testimony from father and a social worker from Henderson County DSS, the court concluded it was "in the best interests of the minor children for [father] to have reasonable visitation with them" and set an ongoing visitation schedule giving father four weeks of visitation each summer, each spring break, and each odd-numbered year Christmas break. Additionally, father was permitted to have visitation with the children in Missouri on the first weekend of each month, provided he gave notice to mother seven days in advance. An order reflecting the court's decision was entered 14 July 2011. The scheduled 12 July 2011 permanent custody hearing was continued and does not appear to have ever taken place.

The terms of the 14 July 2011 order required mother to deliver the minor children to father at the Henderson County Sheriff's office on 16 July 2011 for summer visitation. Mother did not comply with the order and a show cause order was issued on 19 July 2011. On 21 July 2011, mother's counsel made a motion to withdraw from representation, which was granted by the court on 5 August 2011. The hearing on the show cause order was continued for lack of service on mother.

On 17 August 2011, father made a motion to modify custody. The motion alleged that mother had "interfered with and prevented reasonable visitation" and cited examples from November 2010, December 2010, and July 2011. The motion also cited the earlier voluntary dismissal of father's claim for custody that mother had allegedly filed.

On 2 September 2011, a hearing was held to address the order to show cause and the motion to modify custody. Mother was not present for the hearing, and consideration of the order to show cause was once again continued due to lack of service on her. However, father produced a notice of hearing for the motion to modify custody that was mailed to mother and returned marked "refused." Based on the refusal, the trial court concluded the motion to modify custody was properly noticed. The trial court did not hear any additional testimony and based its decision solely upon the verified pleadings.

In an order dated 8 September 2011, the trial court found that "since the entry of the June 14, 2010 custody order, the mother has repeatedly refused to allow the father visitation with the minor children and has interfered with the father's attempts to exercise his court ordered visitation." The court found that mother had "repeatedly refused visits between the father and the minor children since February 2011." The court found that, "for purposes of [the] hearing," mother "filed a document on July 5, 2011 purporting to dismiss the father's action for custody." The court also found that "the actions of the mother since at least June 14, 2010 have been calculated and intentional and for the purpose of denying the father visitation with the minor children." The court then purported to modify the 14 June 2010 consent .order and awarded primary physical custody to father. The order also stated that "mother's visits with the minor childre [sic] shall be at the discretion of the father, to be supervised by the father or an appropriate adult as determined by the father." The trial court's 8 September 2011 order did not mention its recent 14 July 2011 order. Repeated attempts to serve the 8 September 2011 order on mother were unsuccessful.

On 7 December 2011, mother filed a motion pursuant to N.C.G.S. § 1A-1, Rule 59 requesting a new trial or amendment of the 8 September 2011 modification order. Following a 6 February 2012 hearing, the court denied mother's Rule 59 motion. The court memorialized this ruling in a written order dated 8 February 2012. The 8 February 2012 order acknowledged the 14 July 2011 order, but concluded that it was not a modification of custody, or in the alternative, that mother's refusal to abide by that order amounted to a substantial change in circumstances sufficient to modify custody. Mother appeals from the 8 September 2011 order and the denial of her Rule 59 motion.

---

**[1]** Mother first argues the trial court erred by "failing to mention the last permanent custody order of 14 July 2011 and mistakenly using the temporary order of 14 June 2010 as the last permanent custody order in the modification order." Advancing this argument, mother also contends the trial court erred when it determined the temporary order had become permanent by operation of time. We review such questions of law *de novo. Romulus v. Romulus*, __ N.C. App. __, __, 715 S.E.2d 889, 892 (2011) ("Defendant's N.C. Gen. Stat. § 1A–1, Rule 59 motion also presents 'a question of law or legal inference' which is reviewed *de novo*."); *Smith v. Barbour*, 195 N.C. App. 244, 249, 671 S.E.2d 578, 582 ("[W]hether an order is temporary or permanent in nature is a question of law, reviewed on appeal de novo."), *disc. review denied,* 363 N.C. 375, 678 S.E.2d 670 (2009).

Custody orders may either be "temporary" or "permanent." The term "permanent" is somewhat of a misnomer, because "[a]fter an initial custody determination, the trial court retains jurisdiction of the issue of custody until the death of one of the parties or the emancipation of the youngest child[,]" *McIntyre v. McIntyre*, 341 N.C. 629, 633, 461 S.E.2d 745, 748 (1995) (citing *Shoaf v. Shoaf*, 282 N.C. 287, 290, 192 S.E.2d 299, 302 (1972)), and the court may, upon a showing of a substantial change in circumstances, modify the "permanent" custody order. *Simmons v. Arriola*, 160 N.C. App. 671, 674, 586 S.E.2d 809, 811 (2003).

We have considered whether a custody order is temporary or permanent primarily in two situations: First, to determine if an appeal from such an order is interlocutory, *see Sood v. Sood*, __ N.C. App. __, __, 732 S.E.2d 603, 606, *cert. denied, disc. review denied, and appeal dismissed,* __ N.C. __, 735 S.E.2d 336 (2012); second, where this Court reviews the standard a trial court applied in a determination of custody, *see Lamond v. Mahoney*, 159 N.C. App. 400, 403–04, 583 S.E.2d 656,

658–59 (2003). Permanent child custody or visitation orders may not be modified unless the trial court finds there has been a substantial change in circumstances affecting the welfare of the child. *Simmons*, 160 N.C. App. at 674, 586 S.E.2d at 811. If there has been a substantial change in circumstances, the court may modify the order if the modification is in the best interests of the child. *Pass v. Beck*, 210 N.C. App. 192, 195, 708 S.E.2d 87, 90 (2011). Conversely, temporary orders may be modified by proceeding directly to the best–interests analysis. *Simmons*, 160 N.C. App. at 674, 586 S.E.2d at 811.

A trial court's designation of an order as "temporary" or "permanent" is neither dispositive nor binding on an appellate court. *Smith*, 195 N.C. App. at 249, 671 S.E.2d at 582. " '[A]n order is temporary if either (1) it is entered without prejudice to either party[;] (2) it states a clear and specific reconvening time in the order and the time interval between the two hearings was reasonably brief; or (3) the order does not determine all the issues.' " *Peters v. Pennington*, 210 N.C. App. 1, 13–14, 707 S.E.2d 724, 734 (2011) (alterations in original) (quoting *Senner v. Senner*, 161 N.C. App. 78, 81, 587 S.E.2d 675, 677 (2003)). "If the order does not meet any of these criteria, it is permanent." *Id.*

Temporary orders may, however, become permanent by operation of time. *See Anderson v. Lackey*, 163 N.C. App. 246, 254–55, 593 S.E.2d 87, 92 (2004); *Senner*, 161 N.C. App. at 81, 587 S.E.2d at 677; *LaValley v. LaValley*, 151 N.C. App. 290, 292–93, 564 S.E.2d 913, 915 (2002). "[W]here neither party sets the matter for a hearing within a reasonable time," a temporary order is converted into a permanent order. *Senner*, 161 N.C. App. at 81, 587 S.E.2d at 677. "Whether a request for the calendaring of the matter is done within a reasonable period of time must be addressed on a case-by-case basis." *LaValley*, 151 N.C. App. at 293 n.6, 564 S.E.2d at 915 n.6.

In *LaValley*, we held that a temporary order became permanent because twenty-three months was not a reasonable amount of time between the entry of a temporary order and setting a date for an additional hearing on the matter where there were no unresolved issues between the parties. *Id.* at 291–93, 564 S.E.2d at 914–15. Likewise, in *Brewer v. Brewer*, 139 N.C. App. 222, 533 S.E.2d 541 (2000), we held that an order that set a reconvening date more than a year after its issuance was not reasonably brief——and thus permanent——where no unresolved issues remained to be determined. *Id.* at 228, 533 S.E.2d at 546. However, in *Senner*, we held that a delay of twenty months was not unreasonable where the parties continued to negotiate the issue of

custody after entry of the temporary order. *Senner*, 161 N.C. App. at 81, 587 S.E.2d at 677. In fact, this Court has found orders to be temporary as long as four years after entry where extenuating circumstances existed. *See Simmons*, 160 N.C. App. at 675–76, 586 S.E.2d at 812.

In this case, the 14 June 2010 order did not address father's ongoing visitation, but rather provided father with only three specific instances of visitation in 2010. Nor did the 14 June 2010 order explicitly address legal custody. Thus, the order "[did] not determine all the issues" and was a temporary order. *See Peters*, 210 N.C. App. at 14, 707 S.E.2d at 734.

However, following father's motion for visitation, the trial court concluded that the temporary order had "by operation of time, become a permanent custody order." The court made this determination despite the fact that a permanent custody hearing was scheduled to occur in only four days. The record indicates that by at least 8 June 2011, the date was set for the permanent custody hearing. Thus, the permanent custody hearing was set in less than twelve months from the entry of the 14 June 2010 temporary order, a shorter interval than in *LaValley*, *Brewer*, *Senner*, and *Simmons*. The record also indicates the parties were before the court at least three times in the intervening period between the entry of the temporary order and the scheduled permanent custody hearing. Additionally, the temporary order did not resolve all of the issues between the parties——unlike in *LaValley* and *Brewer*. Based on these facts, we conclude a hearing was set "within a reasonable time" and the temporary order did not, therefore, become a final order by operation of time. *See LaValley*, 151 N.C. App. at 291–93, 564 S.E.2d at 914–15.

Additional support for the conclusion that the 14 June 2010 order remained a temporary order can be found in the standard the court used to modify the order to include ongoing visitation. While the trial court concluded the temporary order had become permanent by operation of time, the court did not require father to show a substantial change in circumstances before the modification, as is the standard for modification of a permanent order. *See Simmons*, 160 N.C. App. at 674, 586 S.E.2d at 811.

Moreover, had this particular temporary consent order become a permanent custody order by operation of time, father would not have been entitled to any visitation with his children. " 'In the absence of extraordinary circumstances, a parent should not be denied the right of visitation.' " *Moore v. Moore*, 160 N.C. App. 569, 573, 587 S.E.2d 74, 76 (2003) (quoting *In re Stancil*, 10 N.C. App. 545, 551, 179 S.E.2d 844, 849 (1971)). In fact, "prior to denying a parent the right of reasonable visitation, [the trial court] shall make a written finding of fact that the parent

being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child." N.C. Gen. Stat. § 50-13.5(i) (2011). We therefore clarify that a temporary custody order that does not set an ongoing visitation schedule cannot become permanent by operation of time.[1]

While the 14 June 2010 order was temporary and did not become a permanent order by operation of time, the ensuing 14 July 2011 order was a permanent order. The 14 July 2011 order was not "entered without prejudice to either party"; it did not state "a clear and specific reconvening time"; and the order did "determine all the issues" by setting an ongoing visitation schedule and determining primary and legal custody. *See Peters*, 210 N.C. App. at 13–14, 707 S.E.2d at 734. Therefore, the 14 July 2011 order was a permanent order. *See id.*

Having determined the 14 July 2011 order was a permanent order, we must agree with mother that the trial court erred by failing to mention its latest permanent order and purporting to modify the older 14 June 2010 order. When considering a modification of custody, courts must look to the latest permanent custody order, because "a new order for custody . . . modifies or supersedes" the old order. *See, e.g.*, N.C. Gen. Stat. § 50-13.7(b) (2011). Failing to do so was erroneous as a matter of law.

[2] Mother next argues the trial court erred "by using findings of fact that were *res judicata* to support a conclusion of law that there has been a substantial change of circumstances and to modify custody." We agree.

"When all substantial facts relevant to the issue of custody are revealed to the court at the time of the original custody decree, a change of circumstances must be shown before that decree can be modified." *Wehlau v. Witek*, 75 N.C. App. 596, 599, 331 S.E.2d 223, 225 (1985), *overruled on other grounds by Pulliam v. Smith*, 348 N.C. 616, 620 & n.1, 501 S.E.2d 898, 900 & n.1 (1998). "The reason behind the often stated requirement that there must be a change of circumstances before a custody decree can be modified is to prevent *relitigation* of conduct and circumstances that antedate the prior custody order." *Newsome v. Newsome*, 42 N.C. App. 416, 425, 256 S.E.2d 849, 854 (1979). Therefore, when evaluating whether there has been a substantial change in circumstances, courts may only consider events which occurred after the entry of the previous order, unless the events were previously undisclosed to the court. *See Lang v. Lang*, 197 N.C. App. 746, 750, 678 S.E.2d 395,

---

1. A court may not, however, attempt to use repeated temporary orders to evade appellate review. *See Cox v. Cox*, 133 N.C. App. 221, 232–33, 515 S.E.2d 61, 69 (1999).

398 (2009) (holding that the trial court properly considered only events which occurred after entry of the prior custody order when it concluded that there was a change of circumstances); *Ford v. Wright*, 170 N.C. App. 89, 96, 611 S.E.2d 456, 461 (2005) ("As the trial court had already considered the parties' past domestic troubles and communication difficulties in the prior order, without findings of additional changes in circumstances or conditions, modification of the prior custody order was in error."); *Newsome*, 42 N.C. App. at 425, 256 S.E.2d at 854 ("When, however, as in the present case, facts pertinent to the custody issue were not disclosed to the court at the time the original custody decree was rendered, courts have held that a prior decree is not res judicata as to those facts not before the court.").

In this case, the trial court's 8 September 2011 order modifying custody contains the finding that "since the entry of the June 14, 2010 custody order, the mother has repeatedly refused to allow the father visitation with the minor children and has interfered with the father's attempts to exercise his court ordered visitation," and cites instances in November and December of 2010. The trial court also found that "mother has repeatedly refused visits between the father and the minor children since February 2011" and "[t]hat the actions of mother since at least June 14, 2010 have been calculated and intentional and for the purpose of denying the father visitation with the minor children." As we have concluded that a permanent order was entered on 14 July 2011, the only facts that are not *res judicata* for a determination of a substantial change in circumstances are facts that occurred after the 8 July 2011 hearing or prior facts that were not disclosed to the court. *See Newsome*, 42 N.C. App. at 425, 256 S.E.2d at 854. To the extent these findings contain information that was disclosed to the court on or before the 8 July 2011 hearing, we hold those findings were *res judicata* and were improperly considered.[2]

[3] Mother next argues the trial court erred "in granting the custodial parent the exclusive authority to decide when, where and if the noncustodial parent has visitation" and "erred in granting the custodial parent the exclusive authority to decide under whose supervision the

---

2. From the record before us, it appears the only facts properly before the court during the modification hearing were the missed summer 2011 visitation (which is not mentioned in the modification order) and the alleged dismissal of father's complaint, on which the court had delayed ruling. We do not address today whether this is a sufficient basis to modify custody, but rather reverse the trial court's denial of the Rule 59 motion, vacate the 8 September 2011 order, and remand for a new hearing on the issue of permanent custody.

WOODRING v. WOODRING

[227 N.C. App. 638 (2013)]

non-custodial parent has visitation and/or by allowing the custodial parent to be the supervisor." We agree.

A court may not award the custodial parent exclusive control over visitation. *Brewington v. Serrato*, 77 N.C. App. 726, 733, 336 S.E.2d 444, 449 (1985) (citing *Stancil*, 10 N.C. App. at 551–52, 179 S.E.2d at 849). "To give the custodian of the child authority to decide when, where and under what circumstances a parent may visit his or her child could result in a complete denial of the right and in any event would be delegating a judicial function to the custodian." *Stancil*, 10 N.C. App. at 552, 179 S.E.2d at 849.

In this case, the 8 September 2011 order stated "mother's visits with the minor childre [sic] shall be at the discretion of the father, to be supervised by the father or an appropriate adult as determined by the father." This provision plainly awards father exclusive control over mother's visitation, and as such is erroneous.

For the foregoing reasons, we must reverse the trial court's denial of mother's motion pursuant to N.C.G.S. § 1A-1, Rule 59, vacate the 8 September 2011 order, and remand with instructions for the trial court to hold a new custody hearing. As mother is entitled to a new hearing, we decline to address the remaining issues she raises on appeal.

Reversed and Remanded.

Judges ERVIN and DILLON concur.