An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-852

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

ELIZABETH TRICEBOCK,
        Plaintiff,

   v.                              Mecklenburg County
                                   No. 11 CVD 1704
DIEZEL KRENTZ,
        Defendant.


    Appeal by defendant from order entered 11 February 2013 by Judge Gary L. Henderson in Mecklenburg County District Court. Heard in the Court of Appeals 8 January 2014.


    *No brief filed on behalf of plaintiff-appellee.*

    *Arnold & Smith, PLLC, by Matthew R. Arnold, for defendant-appellant.*


    GEER, Judge.


    Defendant Diezel Krentz appeals from the trial court's order awarding primary physical custody of his son to the child's mother, plaintiff Elizabeth Tricebock, and denying defendant's request for attorney's fees. With respect to custody, we hold that the trial court's findings of fact are supported by substantial evidence and that the findings, in

turn, support the trial court's conclusion that the child's best interests are served by awarding primary physical custody to plaintiff. We further hold, however, that the trial court failed to make sufficient findings of fact to support its denial of defendant's request for attorney's fees, and we accordingly reverse the denial of attorney's fees and remand for further findings of fact.

### Facts

Plaintiff and defendant never married, but they dated for several months and are the parents of a minor son born on 23 February 2009. The child has been in plaintiff's primary physical custody since birth. Plaintiff filed a complaint for custody on 26 January 2011, and on 7 March 2011, defendant filed an answer, counterclaims for custody, modification of child support, and attorney's fees. Defendant also made motions for court-ordered drug testing, appointment of a guardian ad litem ("GAL") and custody advocate, and a temporary parenting agreement.

The trial court entered a "Consent Temporary Parenting Arrangement Order" on 26 April 2011 that, based on the consent of the parties, awarded plaintiff primary physical custody, awarded defendant "parenting time" "every week from Wednesday at 7:00 p.m. until Saturday at 7:00 p.m.," set custodial schedules

for holidays, and allowed both parties rights to access information regarding and to participate in the child's schooling, daycare, and medical treatment. Shortly after entry of the April 2011 order, the parties consented to a modification of the custody arrangement such that each parent had the child for an entire weekend on a bi-weekly schedule, with defendant still averaging a total of three nights per week with the child. The trial court appointed two GALs and a custody advocate in an order entered 7 June 2011.

Following a 9 January 2013 hearing, the trial court entered an order for permanent child custody and attorney's fees on 11 February 2013. In its order, the court found that while plaintiff had made bad decisions while pregnant with the child, she had matured, no longer used illegal drugs, was steadily employed, and lived with her serious boyfriend, Peter Figueroa, who was a very positive influence on her. The court further found that defendant's allegations of plaintiff's abuse and neglect of the child, based on injuries the child received while in plaintiff's care, were unfounded.

The court found that defendant had been married for over a year but, given his wife's extended absence from the marital home and defendant's "speculative" testimony regarding the state of his marriage, the court was uncertain of the stability of

defendant's home environment. The court additionally questioned defendant's financial stability given that his business had not yet become profitable and defendant relied upon his parents to meet his expenses. The court determined that both parents could provide a suitable home for the child and were fit and proper to have custody, but since it was in the child's best interests to award primary physical custody to one party, the court awarded primary custody to plaintiff. The court's custody determination was based, in part, on the fact that the parties had previously consented to plaintiff having primary physical custody.

In reaching its determination, the trial court disagreed with the recommendation of the GALs, which the court found to be based in part on defendant's "unsubstantiated" claims of plaintiff's abuse and neglect of the child. The court further awarded the parties joint legal custody, and ordered that defendant have bi-weekly weekend visitation except in the summer, when the parties were ordered to follow an alternating two-week custodial schedule. The trial court denied defendant's request for attorney's fees. Defendant timely appealed to this Court.

## Discussion

Defendant contends that the trial court erred in awarding primary physical custody of the child to plaintiff. Our review

of the custody order in this case requires an inquiry into whether the February 2013 order is an initial permanent custody order or an order modifying a permanent custody order. This inquiry, in turn, requires us to determine whether the April 2011 consent order was a permanent order or a temporary order.

"Custody orders may either be 'temporary' or 'permanent.'" *Woodring v. Woodring*, ___ N.C. App. ___, ___, 745 S.E.2d 13, 17 (2013). A trial court's determination that a custody order is temporary or permanent is "neither dispositive nor binding on an appellate court." *Id.* at ___, 745 S.E.2d at 18. "Instead, whether an order is temporary or permanent in nature is a question of law, reviewed on appeal de novo." *Smith v. Barbour*, 195 N.C. App. 244, 249, 671 S.E.2d 578, 582 (2009).

"'A temporary order is not designed to remain in effect for extensive periods of time or indefinitely . . . .'" *Miller v. Miller*, 201 N.C. App. 577, 579, 686 S.E.2d 909, 911 (2009) (quoting *LaValley v. LaValley*, 151 N.C. App. 290, 293 n.5, 564 S.E.2d 913, 915 n.5 (2002)). The purpose of a temporary order is to "resolve the issue of a party's right to custody pending the resolution of a claim for permanent custody." *Brewer v. Brewer*, 139 N.C. App. 222, 228, 533 S.E.2d 541, 546 (2000). "'[A]n order is temporary if either (1) it is entered without prejudice to either party[;] (2) it states a clear and specific

reconvening time in the order and the time interval between the two hearings was reasonably brief; or (3) the order does not determine all the issues.'" *Woodring*, ___ N.C. App. at ___, 745 S.E.2d at 18 (quoting *Peters v. Pennington*, 210 N.C. App. 1, 13–14, 707 S.E.2d 724, 734 (2011)).

Here, the April 2011 consent order is styled a "Consent Temporary Parenting Arrangement Order." The order does not state that it is entered without prejudice to the parties. Although the order provides that it "shall be temporary in nature" and "shall remain in effect until further order of the Court," there is no date provided in the order for reconvening the trial court. Accordingly, the order does not state "'a clear and specific reconvening time.'" *Id.* at ___, 745 S.E.2d at 18 (quoting *Peters*, 210 N.C. App. at 13–14, 707 S.E.2d at 734).

With respect to custody, the order awards primary physical custody of the child to plaintiff and provides defendant with ongoing visitation. However, the order makes no express provision for legal custody. The order does not, therefore, "'determine all the issues' by setting an ongoing visitation schedule *and determining* primary and *legal custody*." *Id.* at ___, 745 S.E.2d at 19 (emphasis added) (quoting *Peters,* 210 N.C. App. at 14, 707 S.E.2d at 734)). Since the order did not

resolve all legal custody issues, it was a temporary order when entered.

"Temporary orders may, however, become permanent by operation of time." *Id.* at ___, 745 S.E.2d at 18. "[W]here neither party sets the matter for a hearing within a reasonable time, the 'temporary' order is converted into a final order." *Senner v. Senner*, 161 N.C. App. 78, 81, 587 S.E.2d 675, 677 (2003). This determination is made on a case-by-case basis. *Id.*

In *Woodring*, this Court found that a custody order was temporary since it did not address ongoing visitation and did not explicitly address legal custody. ___ N.C. App. at ___, 745 S.E.2d at 18. The record showed that the permanent custody hearing was set in "less than twelve months" from the entry of the relevant temporary order. *Id.* at ___, 745 S.E.2d at 19. The record further demonstrated that "the parties were before the court at least three times in the intervening period between the entry of the temporary order and the scheduled permanent custody hearing." *Id.* at ___, 745 S.E.2d at 19. On those facts, this Court held that the hearing was set within a reasonable time and the temporary order did not convert into a final order. *Id.* at ___, 745 S.E.2d at 19.

In this case, the trial court's 11 February 2013 permanent custody order indicates that "[s]hortly after" entry of the April 2011 temporary order, the parties agreed to modify the visitation provisions of the temporary order so that each parent had the child for a full weekend on a bi-weekly basis, and that the parties maintained that schedule until the permanent custody hearing. At the hearing, plaintiff testified that the consensual modification to custody occurred in May or June 2011.

The trial court entered an order appointing GALs in this case on 7 June 2011. After that order, the next filings in this case included in the record are a 29 March 2012 filing by plaintiff's counsel noting that counsel was appearing as counsel of record, a 20 April 2012 motion for an order to appear and show cause for civil contempt filed by defendant alleging plaintiff violated the terms of the April 2011 consent order by moving in with her boyfriend, and a 20 April 2012 order for plaintiff to appear at a hearing on 2 May 2012 and show cause why she should not be held in contempt based on defendant's motion. There are no further orders on the show cause motion and no indication in the record how that matter was resolved. Other than those filings, there is nothing else indicating the status of the case prior to the 9 January 2013 permanent custody hearing.

The record does not indicate when one or both of the parties requested that a permanent custody hearing be set. The significant date for our determination is the date the hearing was set, rather than the date of the hearing itself, since, given "the crowded court calendars in many of the counties of this State," "[a] party should not lose the benefit of a temporary order if she is making every effort to have the case tried but cannot get it heard because of the case backlog." *LaValley*, 151 N.C. App. at 293 n.5, 564 S.E.2d at 915 n.5. However, given the record before us, we know only that the hearing was set at some point between the 26 April 2011 order and the 13 January 2013 hearing, a period of between 20 and 21 months.

Although the length of time until the hearing was set may have been longer here than in *Woodring*, we find *Woodring* controlling given the activity of the parties in the interim, the fact that the temporary order left issues unresolved, and the fact that the record does not reveal the actual date on which the hearing was set. With respect to the latter issue, it is important that the trial court treated the April 2011 order as a temporary order -- in both the April 2011 order and the February 2013 order -- and "'[a]n appellate court is not required to, and should not, assume error by the trial judge

when none appears on the record.'" *Pharr v. Worley*, 125 N.C. App. 136, 139, 479 S.E.2d 32, 34 (1997) (quoting *State v. Williams*, 274 N.C. 328, 333, 163 S.E.2d 353, 357 (1968)).

We, therefore, conclude that the April 2011 order was a temporary order when entered and that it was not converted into a permanent order by the parties' failure to set a hearing within a reasonable amount of time. *See also Senner*, 161 N.C. App. at 81, 587 S.E.2d at 677 (holding delay of 20 months reasonable and did not convert temporary order into permanent order when parties were engaged in negotiations for a new custody arrangement, those negotiations later broke down, and one party then sought modification of temporary custody order).

In our review of the trial court's custody order, the findings of fact are conclusive on appeal if there is substantial evidence to support them, even if other evidence might sustain findings to the contrary. *Everette v. Collins*, 176 N.C. App. 168, 170, 625 S.E.2d 796, 798 (2006). We review the trial court's conclusions of law to determine if they are supported by its findings of fact. *Id.* at 171, 625 S.E.2d at 798. We will not upset the trial court's decision with respect to custody absent an abuse of discretion. *Id.* Since the April 2011 order was a temporary order, the applicable standard of review for proposed "modifications" to that order in the court's

February 2013 order is the "'best interest of the child.'" *Simmons v. Arriola*, 160 N.C. App. 671, 674, 586 S.E.2d 809, 811 (2003).

Defendant argues that the trial court abused its discretion in determining that "[i]t is in the best interest of the minor child to remain in [plaintiff's] primary physical custody, with [defendant] having visitation as set forth" in the order.  In support of its determination, the trial court found that plaintiff "has made some bad decisions in the past when she was pregnant with the minor child, but she has shown great progress in maturing and settling into her role as a mother"; that plaintiff had not used cocaine for ten years, had not used marijuana for two years, and had passed a court-ordered drug test; that plaintiff has stable employment; that plaintiff lives with her boyfriend, Mr. Figueroa, who has children himself and who "appears to be very credible and a positive influence" on plaintiff, and that their relationship is "far beyond mere convenience or casual"; that although defendant testified to several incidents involving injury to the child that defendant characterized as abuse and neglect, "there was not any credible evidence of abuse and neglect against [plaintiff], and [defendant] offered no testimony or evidence from [the

Department of Social Services ("DSS")] to substantiate any claims of abuse and neglect."

With respect to defendant, the trial court found it was "uncertain of the stability of [defendant's] home environment and the nature of his estranged wife's relationship with the child" because defendant's wife had not been in his home for about four months, defendant had moved to a new condo without input from her, defendant's wife was not at the hearing and was not pictured in any photographs presented by defendant of him and the child, and defendant provided only "speculative testimony regarding the state of his marriage." The court also found that although defendant consistently paid child support, received Social Security disability benefits and owned an automotive garage, his business had not yet shown a profit and defendant relied upon financial assistance from his parents to pay his expenses, causing the court to "question the financial stability of [defendant's] household." On the other hand, the court found defendant "is a very positive role model in the child's life and enjoys spending time with the minor child and involving him in diverse and positive activities."

The court further found that both plaintiff and defendant can provide a suitable home for the minor child; that both parties seem to have a good loving relationship with the child;

that both parties "are fit and proper to exercise the care, custody, and control over the minor child" as set out in the order; and that "[i]f the parties lived closer together, th[e] Court would have strongly considered a joint physical custody schedule since the child appears to be cared for equally well at either household." However, the court found, with the parties living about an hour apart in travel time, and with the child turning four soon and entering preschool in the upcoming fall, "it appear[ed] necessary to decide between one of the households for primary physical custody." Ultimately, since the parties had already agreed to a consent order that placed primary physical custody with plaintiff, the court found "no evidence that rises to the level where the primary living arrangement previously agreed upon by the parties should be disturbed."

Defendant, however, argues that the trial court abused its discretion in its best interests determination since evidence showed that plaintiff did not allow defendant to take the child from her home for several months prior to entry of the April 2011 consent order, but did offer defendant visitation within her home. It is true that a custodial parent's interference with the visitation rights of one parent can be a factor in the trial court's determination of the child's best interests. *Hicks v. Alford*, 156 N.C. App. 384, 390, 576 S.E.2d 410, 414

(2003) ("Where interference by one parent with the visitation privileges of the other parent 'becomes so pervasive as to harm the child's close relationship with the noncustodial parent, there can be a conclusion drawn that the actions of the custodial parent show a disregard for the best interests of the child, warranting a change of custody.'" (quoting *Woncik v. Woncik*, 82 N.C. App. 244, 248, 346 S.E.2d 277, 279 (1986))).

However, here, the trial court found that since entry of the April 2011 consent order, plaintiff had allowed defendant regular weekly visitation, pursuant to the order, for an average of three nights a week. Given its findings, the decision regarding the weight to be given evidence that plaintiff had denied visitation outside of plaintiff's home for several months prior to entry of the April 2011 order was within the court's discretion.

Defendant also contends that the trial court abused its discretion in awarding plaintiff primary physical custody because, at the time of the hearing, plaintiff had been living with Mr. Figueroa for almost a year in violation of the April 2011 consent order. While the court acknowledged that plaintiff's living arrangement violated the order, it nonetheless was "encouraged" by evidence that plaintiff's relationship was "far beyond mere convenience or casual" and

that Mr. Figueroa was "very credible and a positive influence" on plaintiff. Indeed, the court found, defendant's own testimony "praised Mr. Figueroa's involvement with [plaintiff] and the minor child, and [defendant] testified that he was 'thankful' for Mr. Figueroa's involvement with the minor child and his positive influence in the minor child's life." Finally, the court found that Mr. Figueroa pays child support for his own children, is actively involved in their lives, and visits them with "regular bi-weekly weekend visitation." Since Mr. Figueroa was found by the court to be a positive influence on both plaintiff and the child, we cannot conclude that the court abused its discretion in awarding plaintiff custody of the child in light of her violation of the prior court order by living with Mr. Figueroa.

Defendant additionally argues that the trial court's findings as to his relationship with his wife were irrelevant to its best interests determination since the court found that defendant could provide a suitable home and was a positive role model for the child. In making its custody determination, "'[t]he trial court must make a comparison between the two applicants considering *all factors* that indicate which of the two is best-fitted to give the child the *home-life*, care, and supervision that will be most conducive to its well-being.'"

*O'Connor v. Zelinske*, 193 N.C. App. 683, 690-91, 668 S.E.2d 615, 619 (2008) (emphasis added) (quoting *Evans v. Evans*, 138 N.C. App. 135, 142, 530 S.E.2d 576, 580 (2000)). Since the stability of defendant's marriage and the nature of his wife's relationship with the child is a factor affecting the well-being of the child in defendant's home, the trial court properly considered evidence regarding those matters.

We conclude that it was not unreasonable for the trial court, upon finding that both parents have a good, loving relationship with the child and can provide a suitable home for the child, to determine that plaintiff should have primary physical custody given the distance between the parties' homes necessitating one parent to have primary physical custody and the court's questions about the stability of defendant's home environment and his financial status. This is particularly true given the court's further reliance on the fact that the parties had previously agreed for plaintiff to have primary physical custody. *See Dixon v. Gordon*, ___ N.C. App. ___, ___, 734 S.E.2d 299, 303 (2012) (explaining that trial courts may "consult" temporary parenting agreements in determining the best interests of the child for custody determinations), *disc. review denied*, 366 N.C. 604, 743 S.E.2d 191 (2013). Furthermore, that the court disagreed with the children's GALs as to what

custodial arrangement was in the child's best interest does not show an abuse of discretion in this case, especially since the court found that the GALs' recommendation was based in part on "unsubstantiated claims of abuse and neglect." *Cf. In re J.N.S., A.L.M., J.N.S., T.A.S.*, 207 N.C. App. 670, 679, 704 S.E.2d 511, 517 (2010) (explaining that, in dispositional phase of abuse, neglect, and dependency proceeding, a trial court may consider reports by GAL but may not broadly incorporate the reports as court's findings of fact since court must independently make findings).

Defendant also argues that the trial court erred in finding as fact that although defendant testified to several incidents involving injury to the child that defendant characterized as abuse and neglect, "there was not any credible evidence of abuse and neglect against [plaintiff], and [defendant] offered no testimony or evidence from DSS to substantiate any claims of abuse and neglect." Plaintiff's testimony denied the existence of or provided harmless explanations for the instances of abuse and neglect alleged by defendant. The trial court simply believed plaintiff's testimony over defendant's evidence, and we may not revisit that credibility determination. *See Phelps v. Phelps*, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994) (observing, in custody case, "it is within the trial court's discretion to

determine the weight and credibility that should be given to all evidence that is presented").

Further, defendant's argument that defendant's allegations were substantiated by defendant's testimony, an affidavit by defendant's wife, and the recommendation of the GALs fails to recognize that the trial court found that the allegations were not substantiated by "testimony or evidence from DSS." Defendant points to no evidence *from DSS* substantiating his claims of abuse and neglect, and we have found none. The trial court's finding is, therefore, supported by the evidence.

Defendant next challenges the trial court's finding of fact that "a key basis for [the GALs'] recommendation were [sic] unsubstantiated claims of abuse and neglect -- the majority of which occurred prior to entry of" the April 2011 consent order. First, defendant argues that the court erred in finding the allegations of abuse and neglect were "a key basis" for the GALs' recommendation since, in their closing argument, the GALs stated that even without those allegations and the evidence supporting them, their "recommendation would still be the same." However, the GALs went on to argue to the court that the allegations of abuse and neglect and the evidence supporting them "amplif[ied]" their recommendation, and they discussed the alleged abuse and neglect for a substantial portion of their

closing argument. Under these circumstances, the trial court could properly infer that the allegations did, in fact, provide a "key basis" for the GALs' recommendation.

Second, defendant argues that the trial court erred in finding that the majority of the instances of alleged abuse and neglect occurred prior to entry of the April 2011 consent order. Although the evidence tended to show that the alleged instances of abuse and neglect involving a scab on the child's forehead and two black eyes occurred after entry of the April 2011 order, defendant testified to numerous, weekly instances of severe diaper rash, with one being so severe he reported it to DSS, each occurring prior to entry of the order. Defendant's own testimony, therefore, supported the court's finding that the majority of instances of alleged abuse and neglect occurred prior to entry of the April 2011 order.

Defendant also challenges the trial court's finding that plaintiff "has made some bad decisions in the past when she was pregnant with the minor child, but she has shown great progress in maturing and settling into her role as a mother." This finding is supported by plaintiff's testimony that although she once smoked marijuana while pregnant with the child, she had not used marijuana for two years and makes her child her priority. Plaintiff's pastor similarly testified that plaintiff

"demonstrated impressive growth and maturity" in the two years preceding the hearing. Although defendant points to other evidence of plaintiff's drug or alcohol use and contends plaintiff's testimony was "simply not credible," the trial court's finding was supported by substantial evidence, and we will not reweigh witness credibility.

Defendant further contests the trial court's finding that plaintiff "can provide a suitable home for the minor child." Plaintiff's pastor testified that he visited the home plaintiff shared with her parents prior to February 2012 and found it to be "[n]eat and clean and appropriate." Plaintiff also presented photographs of her new home with Mr. Figueroa that supported the trial court's finding that it was suitable.

Defendant nonetheless points to evidence that plaintiff's home was dirty and without running water at times and that because of rot around a back door, the home could not be locked. Defendant further relies upon testimony that plaintiff once asked defendant to take the child because the father of plaintiff's other child had attacked plaintiff and vandalized her home. We note that the evidence relied upon by defendant all pertains to plaintiff's old home. In any event, whether plaintiff's evidence regarding her living situation was more

credible than defendant's evidence was a question solely for the trial court.

Defendant next challenges the trial court's concerns regarding defendant's financial stability. Defendant does not, however, challenge the court's findings that although defendant had consistently paid child support, received Social Security disability, and owned a business, his business had not yet shown a profit and defendant relied upon financial assistance from his parents to meet his expenses. Based on these uncontested findings, the trial court could reasonably question defendant's financial stability. Since the findings are not contested, we will not reweigh evidence of defendant's financial status on appeal.

In sum, we hold the trial court's determination that it was in the child's best interests for plaintiff to have primary physical custody was supported by the trial court's findings of fact which, in turn, were supported by substantial evidence. We further hold that the trial court did not abuse its discretion in concluding that the child's best interests were served by awarding primary physical custody to plaintiff.

Finally, defendant argues that the trial court failed to make sufficient findings of fact to support its order denying defendant's request for attorney's fees. N.C. Gen. Stat. § 50-

13.6 (2013) provides in relevant part: "In an action or proceeding for the custody or support, or both, of a minor child, including a motion in the cause for the modification or revocation of an existing order for custody or support, or both, the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit."

This Court has previously explained that when "an award of attorney's fees is prayed for, but denied, the trial court must provide adequate findings of fact for this Court to review its decision." *Gowing v. Gowing*, 111 N.C. App. 613, 620, 432 S.E.2d 911, 915 (1993). Here, the trial court's only finding with respect to attorney's fees states: "[Defendant's] claim for attorney's fees should be denied." We cannot, based on this conclusory finding, properly review the trial court's decision to deny attorney's fees. *See Spicer v. Spicer*, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005) (holding that even with respect to discretionary decisions, the trial court must "make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law"). We, therefore, reverse the denial of defendant's

motion for attorney's fees and remand for further findings of fact.

Affirmed in part; reversed and remanded in part.

Judges BRYANT and CALABRIA concur.

Report per Rule 30(e).