TYSON, Judge, dissenting.
The majority's opinion concludes a substantial change related to J.J.'s health occurred after the adjudication and entry of the November 2013 permanent custody order, which supported a modification of custody. Upon review of the extensive record, the same issues concerning J.J.'s health were before the trial court before the entry of, and had been adjudicated prior to, the November 2013 order. No substantial change in circumstances exists to support a modification. The trial court's November 2017 order modifying custody should be reversed. I respectfully dissent.
I. Additional Factual Background
In their recitation of the facts, the majority's opinion fails to include J.J.'s extensive medical history and how it relates to the entry of the custody orders. The first permanent custody order of record was entered on 14 May 2013, and granted the parties joint legal custody, with primary physical custody to Defendant-mother. Over the next four months, beginning two days after the entry of that May 2013 order, J.J. was seen by a number of competent and qualified pediatricians and specialists concerning possible allergies. Her extensive medical history is reduced below to the most relevant visits.
On 16 May 2013, Plaintiff took J.J. to Dr. Michael Bean of University Pediatrics, where she was diagnosed with chronic constipation, external hemorrhoid, and fecal impaction. J.J. was prescribed Miralax for her constipation and was referred to Dr. Susan Hungness at Carolina Asthma & Allergy Center to test for potential allergies. J.J.'s skin tests were negative for pollens, molds, inhalants, milk, milk proteins casein and lactalbumin, and sesame seeds. Dr. Hungness did not find or *208 conclude J.J.'s constipation was related to a milk allergy. J.J.'s blood allergy tests indicated a low to moderate level reaction to milk, casein, and lactalbumin. Dr. Hungness recommended J.J. to avoid dairy products for two to three months, with further restriction to be determined by a gastroenterologist.
Defendant-mother took J.J. to Dr. Roopen Patel, also a physician at Carolina Asthma & Allergy Center, for additional testing on 6 August 2013. Skin tests for milk and soy protein allergies were negative, but Dr. Patel recommended continued monitoring for allergic reactions. Defendant also took J.J. to Dr. Lay Cheng at Carolina Pediatric Gastroenterology Clinic on 20 August 2013, as a requested follow-up to a previous appointment made by Plaintiff.
Dr. Cheng suspected J.J.'s constipation was "functional, possibly due to frequent changes in environment," and "reassured" Defendant that J.J. did not have any indication of a milk allergy, "clinically or by allergist's evaluation." Dr. Cheng recommended, inter alia , for J.J. to continue taking Miralax and consuming two cups of calcium and vitamin D fortified milk each day. Dr. Cheng also noted the "communication difficulties" between the parent-parties, and recommended the parties limit J.J.'s medical care providers to one per specialty to avoid confusion, limit costs, and reduce the unnecessary duplication of tests.
After a hearing on Plaintiff's August 2013 motions, the trial court entered a hand-written order modifying custody on 22 November 2013 and an identical typed order was filed over two and a half months later on 7 February 2014. Both orders found and ordered the parties to share physical custody on an alternating two week schedule, and vested Plaintiff-father with the right to make decisions regarding J.J.'s education and vested Defendant-mother with the right to make decisions regarding J.J.'s health.
Defendant took J.J. for further allergy testing by Dr. Laura Jean Larrabee at Cabarrus Pediatrics on 28 July 2014. This test showed low positive reactions to egg whites and cow's milk and borderline reactions to scallops and gluten. On 22 October 2014, Plaintiff, against the express conditions set forth in the permanent custody order, took J.J. to Dr. Jennifer Caicedo of Allergy, Asthma & Immunology Relief for additional allergy testing. Dr. Caicedo noted J.J.'s new blood tests indicated a decrease in reaction to milk. She recommended additional skin testing *163 to milk and "open challenges" to milk and eggs in the office.
Both parties met with Dr. Larrabee on 4 November 2014. Dr. Larrabee advised that J.J.'s indicators for allergies were fairly low, and *209 may not actually indicate any allergies being present, but the skin testing recommended by Dr. Caicedo "would be a more accurate way to determine true allergy." She also relayed that J.J.'s gastrointestinal symptoms "could certainly be related to the amount of stress and discord related to the continuous friction" being generated between the parties.
J.J. underwent skin testing and oral challenge for milk on 17 November 2014 at Allergy Asthma & Immunology Relief. The skin test showed no reaction to milk and J.J. passed the oral challenge "without complication." J.J. also passed her oral challenge for eggs on 9 March 2015.
Plaintiff, again, against the conditions set forth in the November 2013 custody order, took J.J. for renewed and further allergy testing on 18 August 2016. J.J.'s blood test indicated a low level reaction to egg white and milk. Plaintiff and his fiancé, Iris Wilson, consulted with Dr. Caicedo concerning the results. Dr. Caicedo noted Plaintiff and Ms. Wilson had "determined themselves," without any supporting medical evidence, that J.J. had "delayed" reactions to milk and eggs, and believe J.J.'s eczema, development of environmental allergies, and chronic constipation were linked to her egg and milk allergies. Dr. Caicedo stated the results were not indicative of food allergies, and advised Plaintiff and Ms. Wilson that J.J.'s symptoms were not a manifestation of food allergies.
Apparently unhappy with the opinion of Dr. Caicedo and the multiple other specialists J.J. had seen, Plaintiff filed a Rule 35 and Rule 706 motion on 24 October 2016, requesting the trial court to appoint a medical expert "to conduct an evaluation and/or oral challenge" of J.J., due to the parties inability to "agree upon appropriate medical care" for J.J. Plaintiff also filed a motion to modify custody on 28 October 2016, which alleged changed circumstances including the parties' conflict over J.J.'s medical care.
Prior to the hearing on Plaintiff's motions, Defendant took J.J. to Allergy Partners of Rowan, where a skin test was performed for the purported milk allergy. That skin test result also returned as negative for a milk allergy and was consistent with earlier tests.
II. No Change in Circumstances
A permanent custody order may not be modified unless there has been a substantial change in circumstances affecting the welfare of the child. Peters v. Pennington , 210 N.C. App. 1, 13, 707 S.E.2d 724, 734 (2011) (emphasis supplied). A trial court's findings of fact are conclusive *210 on appeal if supported by substantial evidence, which "a reasonable mind might accept as adequate to support a conclusion." Everette v. Collins , 176 N.C. App. 168, 170, 625 S.E.2d 796, 798 (2006). A trial court's conclusions of law are conclusive if supported by the findings of fact. Id. at 171, 625 S.E.2d at 798.
"Whether a change of circumstances affecting the welfare of the child has or has not occurred is a conclusion of law." Jordan v. Jordan , 162 N.C. App. 112, 116, 592 S.E.2d 1, 4 (2004). We review conclusions of law de novo . Smith v. Smith , 247 N.C. App. 135, 143, 786 S.E.2d 12, 20 (2016).
"[W]hen evaluating whether there has been a substantial change in circumstances, courts may only consider events which occurred after the entry of the previous order, unless the events were previously undisclosed to the court." Woodring v. Woodring , 227 N.C. App. 638, 645, 745 S.E.2d 13, 20 (2013) (emphasis supplied). This requirement "is to prevent relitigation of conduct and circumstances that antedate the prior custody order" and have already been adjudicated and ruled upon. Newsome v. Newsome , 42 N.C. App. 416, 425, 256 S.E.2d 849, 854 (1979) (emphasis original).
The majority's opinion asserts "there is no evidence in the record that the trial court considered the child's specific health needs or was aware that [P]laintiff believed the child had allergies" when it drafted the November 2013 order. However, the Rule 35 motion requested a "full physical evaluation to determine the health of the child as it relates to constipation, allergies, and/or excema [sic]."
*164 Further, prior to the 29 October 2013 hearing, Plaintiff had served numerous subpoenas to doctors involved in J.J.'s care, requesting production of medical records or to appear at the hearing. Subpoenas were sent by Plaintiff to Dr. Hungness and Dr. Patel, of Carolina Asthma & Allergy Center, who had conducted allergy testing on J.J.; Dr. Cheng, of Carolina Pediatric Gastroenterology, who had reviewed some of J.J.'s allergy tests ; and Cabarrus Pediatrics, J.J.'s primary care practice with Defendant.
The November 2013 order also took into account medical decisions, and expressly allocated the authority to decide J.J.'s medical care to Defendant. While there was further conflict regarding J.J.'s purported allergies after the November 2013 order, that conflict arose as a result of Plaintiff's and his fiancé's failure to adhere to that order. Plaintiff's desire to relitigate the matter of J.J.'s medical care is not a change in *211 circumstances requiring a modification of the custody agreement. See Newsome , 42 N.C. App. at 425, 256 S.E.2d at 854.
The majority's opinion asserts Plaintiff's October 2016 motions identify "new" symptoms of eczema, hives, and bumps, and Plaintiff had obtained a blood allergy test subsequent to the November 2013 order indicating J.J. had milk allergies. Plaintiff's August 2013 Rule 35 motion also requested the trial court order a "full physical evaluation to determine the health of [J.J.] as it relates to constipation, allergies, and/or excema [sic]."
The subsequent blood allergy tests indicated J.J. had low level milk allergies. After the 2014 test, Dr. Larrabee noted such a low level may not actually indicate an allergy. She also noted that skin testing is "a more accurate way to determine true allergy" over blood tests. After the blood allergy tests in 2016, Dr. Caicedo informed Plaintiff the low-level results were not indicative of an allergy, but Plaintiff had already made up his mind despite all medical evidence to the contrary.
The trial court appointed Dr. Akiba Green of Lake Norman Health and Wellness to conduct an evaluation to ascertain whether or not J.J. had food allergies. Dr. Green is a chiropractor with an undergraduate degree in health education, a doctor of chiropractic degree from Sherman College of Chiropractic, and various certifications, including a 200-hour certification through "Functional Medicine University." Dr. Green conducted blood tests and opined J.J. had allergies to cow's milk, wheat, and egg white, and delayed reactions to oats, rice, tapioca, teff, and quinoa, in contravention to the numerous other specialists' opinions.
III. Conclusion
After review of the extensive medical records provided for J.J., no substantial evidence, which "a reasonable mind might accept as adequate to support a conclusion," exists to support a finding there was a substantial change in circumstances to modify the order. See Everette , 176 N.C. App. at 170, 625 S.E.2d at 798. The issue of J.J.'s purported allergies was present prior to the entry of the November 2013 order.
Testing, by at least four medical doctors, including two allergy specialists, prior to that order indicated J.J. had no allergies. Subsequent testing by Defendant, and also by Plaintiff, contrary to the mandates of the November 2013 order, indicate the same. Those doctor visits do indicate, however, Plaintiff and his fiancé, had "determined [for] themselves" that J.J. had delayed allergic reactions, contrary to the diagnoses *212 of the many previous physicians and at least three who were consulted after the entry of the November 2013 order.
Without any medical support, Plaintiff has become convinced his daughter has suffered from food allergies since she was three years old. Despite extensive allergy testing, physician consultation, and a court order dictating Defendant was vested with the right to make decisions concerning J.J.'s health, Plaintiff persisted in violation of Defendant's vested authority. Each time Plaintiff did not get the diagnosis he wanted, he sought out other doctors, and eventually enlisted the trial court to relitigate an issue which had existed for years and had previously been adjudicated. See Newsome , 42 N.C. App. at 425, 256 S.E.2d at 854. Plaintiff's repeated subjecting of his young daughter to invasive examinations, skin pricks, and blood tests to achieve *165 his predetermined and unfounded notions borders on child abuse.
No substantial evidence exists to support a finding that a substantial change in circumstances had occurred since the entry of the November 2013 custody order. The alleged "changed circumstances," J.J.'s medical care and purported allergies, were apparent to, and litigated before, the trial court prior to the entry of the November 2013 order and were not to be reconsidered or relitigated by the trial court. See Woodring , 227 N.C. App. at 645, 745 S.E.2d at 20.
Without a showing of a substantial change of circumstances by Plaintiff, the trial court cannot reach the consideration of the best interests of the child, and erred by modifying an existing permanent custody order. Peters , 210 N.C. App. at 13, 707 S.E.2d at 734.
The 3 November 2017 order modifying custody should be reversed. I respectfully dissent.