An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-205

Filed 1 October 2025

Forsyth County, No. 24CVD500324-330

LOLA SALAMAH, Plaintiff,

v.

AMRO ELSAYED, Defendant.

Appeal by defendant from order entered 18 September 2024 by Judge Thomas W. Davis, V in Forsyth County District Court. Heard in the Court of Appeals 10 September 2025.

> *Legal Aid of North Carolina, Inc., by Corey Frost, Monica Savidge, TeAndra H. Miller, James Battle Morgan, Jr., and Celia Pistolis, for plaintiff-appellee.*

> *Bullock Clay & Furr, PLLC, by Jessica S. Bullock and Adam D. Furr, for defendant-appellant.*

GORE, Judge.

Defendant, Amro Elsayed, appeals the Domestic Violence Protective Order entered against him. Defendant challenges the sufficiency of the trial court's findings that defendant committed acts of domestic violence against plaintiff and the minor children, that the trial court had subject matter jurisdiction over temporary custody

of the children, and to support the temporary custody order in favor of plaintiff. Upon reviewing the briefs and the record, we affirm.

**I.**

Plaintiff and defendant were married with two minor children, Ali and Nour,[1] when the incidents leading to this appeal occurred. Plaintiff alleged defendant was physically and verbally abusive to her throughout their marriage. Plaintiff alleged defendant attacked her by grabbing her neck and shouting at her after she had called her sister to cancel dinner plans because defendant no longer wanted to come. Plaintiff stated on another occasion their son, Ali, was fidgeting during a prayer because of his autism, and defendant told him, "God is going to kill you, because you can't sit still or pray right." Plaintiff intervened by telling defendant not to say that; defendant allegedly became angry and shoved and hit her arms and back. On another occasion according to plaintiff, defendant assaulted her and when she fought back, he began recording her to show family and friends and suggest plaintiff was the abuser.

Plaintiff and defendant separated in January 2024. Defendant had visits with the children for some dinners and occasionally kept them overnight at his apartment. Defendant allegedly became angry at Nour during one of her visits with him; he called her a monster and told her he never wanted to see her again. Nour came home crying from that visit.

---

[1] Pseudonyms used to protect the identity of the minor children.

On 19 April 2024, defendant left a voicemail with plaintiff's father that he intended plaintiff to also hear. Within the voicemail, the translation from Arabic to English essentially stated the following:

> Listen to me, Hajj, you have a deadline and I will try one last time so that no one comes and blames me, but I swear to God, if the deadline expires and I go to court and have to do so, I will take the worst revenge, and I will let the people beg me to intercede on your behalf.

Plaintiff testified she felt threatened by his voicemail and feared he would do something to her. Two days later, defendant arranged to pick up Ali and called him before he came. Plaintiff testified she overheard defendant tell Ali, who was twelve years old, to retrieve defendant's guns and give them to him when he picked Ali up. Plaintiff testified Ali was scared and asked his dad, "are you trying to kill my mom or what?" Defendant told Ali that he would call the police if Ali did not bring the guns. Plaintiff called the police because she did not feel safe. The police recommended plaintiff go to the magistrate to seek charges against defendant.

Plaintiff ultimately sought and obtained an Ex Parte Domestic Violence Protective Order ("DVPO") against defendant. Defendant filed a separate complaint in May 2024 for temporary custody of the children. The hearing for the DVPO occurred on 18 September 2024. The trial court concluded defendant had committed acts of domestic violence against plaintiff and the minor children and that there was a danger of serious or immediate injury to both. The trial court also entered a temporary custody order addendum to the DVPO that awarded temporary custody to

plaintiff and limited defendant's contact with the children to phone or video calls initiated by the minor children. The DVPO and addendum were made effective for one year, expiring 18 September 2025. Defendant timely appealed the DVPO and temporary custody order.

Defendant's separate complaint for temporary custody of the children came for hearing on 22 January 2025. The trial court modified temporary custody such that defendant could have remote visitation through voice, Facetime, Skype, and could directly text the children. The trial court determined the DVPO would remain in effect, "except as this temporary order provides." A subsequent temporary order was entered on 10 June 2025 that awarded joint legal and physical custody of the children to plaintiff and defendant.

## II.

Defendant appeals of right pursuant to N.C.G.S. § 7A-27(b) because the DVPO is a final order. We review a DVPO to determine "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Where there is competent evidence . . . those findings are binding on appeal." *Hensey v. Hennessy*, 201 N.C. App. 56, 59 (2009). "To support entry of a DVPO, the trial court must make a conclusion of law that an act of domestic violence has occurred." *Jay v. Jay*, 912 S.E.2d 873, 875 (N.C. Ct. App. 2025).

### A.

Defendant argues the trial court did not have sufficient findings to support its conclusion that defendant had committed acts of domestic violence against plaintiff and the children such that there is a danger of serious or imminent injury to them. We disagree.

The trial court must enter a DVPO upon determination "an act of domestic violence has occurred." *Id.* at 876. Domestic violence is defined in part as: "Placing the aggrieved party or a member of the aggrieved party's family or household in fear of imminent serious bodily injury or continued harassment." N.C.G.S. § 50B-1(a)(2) (2023) (cleaned up). This is a subjective test that requires the trial court "find as fact the aggrieved party actually feared imminent serious bodily injury." *Smith ex rel. Smith v. Smith*, 145 N.C. App. 434, 437 (2001) (cleaned up).

The trial court made the following findings related to plaintiff's actual fear of imminent serious bodily injury:

> 3b. On 19 April 2024, the defendant placed in fear of imminent serious bodily injury the plaintiff.

> Defendant left voicemail for plaintiff's father in which he stated, ". . . but I swear to God, if the deadline expires and I go to court and have to do so, I will take the worst revenge, and I will let the people beg me to intercede on your behalf . . . I will show you the worst days you can see . . . ." Based on defendant's past physical abuse, threats, and requests for guns, she believed it to be a threat.

> 4. The defendant is in possession of, owns or has access to firearms, ammunitions, and gun permits described below.

Handguns.

> 5. The defendant made threats to seriously injury or kill the plaintiff, see above narrative re: voicemail defendant left for plaintiff.

These findings sufficiently support the trial court's conclusion plaintiff had actual fear of imminent serious bodily injury. Defendant argued the findings were vague as was the case in *Kennedy v. Morgan*. Unlike in *Kennedy*, the trial court found more than a "vague finding of a general history of abuse" by quoting part of the voicemail and further stating there's been physical abuse, threats, and request for guns, along with a finding defendant has access to handguns. 221 N.C. App. 219, 223 (2012).

Defendant also argues there is not competent evidence to support these findings because the translations of the voicemail differed during the hearing. However, defendant did not make this challenge at the trial court and the portion in the order is a direct quotation from a properly admitted exhibit during the hearing. Defendant waived this argument by failing to argue this at the trial court. *See M.E. v. T.J.*, 380 N.C. 539, 562 (2022) (cleaned up) ("This Court has long held that issues and theories of a case not raised below will not be considered on appeal."). Accordingly, the trial court's findings were sufficient to support its conclusion that defendant committed domestic violence.

**B.**

Next, defendant argues the trial court did not make sufficient findings to support its conclusion it had subject matter jurisdiction pursuant to the UCCJEA on

the issue of temporary custody. He also argues the trial court did not provide him with sufficient notice that temporary custody would be considered at the DVPO hearing. Notably, plaintiff asserts the issues surrounding the temporary child custody order are moot because the trial court has entered subsequent temporary custody orders.

"A case is moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Martin v. Martin*, 266 N.C. App. 296, 309 (2019). "A new order for custody modifies or supersedes the old order." *Woodring v. Woodring*, 227 N.C. App. 638, 645 (2013) (cleaned up).

In the present case, defendant filed a separate complaint seeking custody of the children. On 18 September 2024, the trial court entered the DVPO with a temporary custody addendum. The custody was modified by an order on 22 January 2025. The modified temporary custody order adjudged that the DVPO would remain in full effect, "except as this temporary order provides." The January 2025 temporary custody order forbid defendant from in-person visitation with the children. A subsequent temporary custody order was entered on 10 June 2025 that awarded joint legal and physical custody of the children. Accordingly, these subsequent temporary custody orders superseded the temporary custody order addendum in the DVPO. Therefore, we consider defendant's arguments about the DVPO temporary custody order to be moot as the addendum no longer has any legal effect.

## III.

For the foregoing reasons, the trial court's findings are supported by competent evidence that in turn supports its conclusions of law to issue the DVPO against defendant.

AFFIRMED.

Judges TYSON and MURRY concur.

Report per Rule 30(e).