IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-488

 Filed: 18 December 2018

Mecklenburg County, No. 11 CVD 22286

DEXTER D. PEELER, Plaintiff,

 v.

ANGELA E. JOSEPH, Defendant.

 Appeal by defendant from an order entered 3 November 2017 by Judge Jena

P. Culler in Mecklenburg County District Court. Heard in the Court of Appeals

15 November 2018.

 Myers Law Firm, PLLC, by Matthew R. Myers, for plaintiff-appellee.

 Ferguson, Hayes, Hawkins & DeMay, PLLC, by James R. DeMay, for
 defendant-appellant.

 ARROWOOD, Judge.

 Angela E. Joseph (“defendant”) appeals from an order modifying custody of

minor child (“J.J.”) and granting sole legal and primary physical custody to Dexter D.

Peeler (“plaintiff”). For the reasons stated herein, we affirm.

 I. Background

 Plaintiff and defendant engaged in a relationship that resulted in the birth of

one minor child in April 2010. Plaintiff filed an action for custody of the minor child,

J.J, on 9 December 2011. The matter came on for trial before the Honorable
 PEELER V. JOSEPH

 Opinion of the Court

Charlotte Brown on 14 and 17 September 2012. Thereafter, the trial court entered a

permanent custody order on 14 May 2013, which granted the parties joint legal

custody, and awarded defendant primary physical custody.

 Plaintiff filed a Rule 35 motion on 30 August 2013. The motion alleged J.J.

had been diagnosed with chronic constipation, external hemorrhoid, and fecal

impaction. It further alleged that due to defendant’s “history of mistrust and/or

disdain for [plaintiff] . . . the parties are generally unable to be on one (1) accord as

it relates to the care and treatment of the minor child.” Plaintiffs’ motions were heard

before the Honorable Charlotte Brown on 22 November 2013. A hand-written order

modifying custody was filed on 22 November 2013 and an identical typed order was

filed 7 February 2014. Both orders ordered the parties to share physical custody on

an alternating two week schedule, vested plaintiff with the right to make decisions

regarding education, and vested defendant with the right to make decisions regarding

health.

 On 24 October 2016, plaintiff filed a Rule 35 and Rule 706 motion to request

the trial court appoint an expert “to conduct an evaluation and/or oral challenge” of

J.J., due to the parties’ inability to “agree upon the appropriate medical care” of the

minor child due to the parties’ “impassable deadlock on whether the minor child has

a dairy intolerance and/or food allergy.” On 28 October 2016, plaintiff filed a motion

to modify custody, alleging changed circumstances, including that the minor child

 -2-
 PEELER V. JOSEPH

 Opinion of the Court

had allergies, eczema, and hives and bumps, and again alleging the parties have

reached a deadlock on whether the minor child has a dairy intolerance and/or food

allergy. Defendant denied the allergies existed, even though a blood test taken since

the 22 November 2013 and 7 February 2014 orders indicated the minor child has a

milk allergy.

 Plaintiff’s motions were heard on 10 January 2017. The trial court appointed

Dr. Akiba Green, D.C. (“Dr. Green”) as the court’s expert and ordered that he evaluate

J.J. and “determine the existence of any and all food allergies and/or intolerances

including, but not limited to, any and all delayed food allergies.” Dr. Green evaluated

J.J. and found J.J. “is allergic to cow’s milk, egg white and wheat” and “has delayed

reactions to dairy, gluten, tapioca, teff, and quinoa.” Despite Dr. Green’s findings,

defendant continued to deny J.J.’s allergies exist.

 On 3 November 2017, the trial court entered an order granting plaintiff’s

motion to modify custody and awarding plaintiff sole legal and primary physical

custody of J.J., with defendant allowed visitation every other weekend, from

Thursday after the child is released from school, afterschool and/or summer camp

until Monday morning when school and/or summer camp resumes, and shared

holiday visitation.

 Defendant appeals.

 II. Discussion

 -3-
 PEELER V. JOSEPH

 Opinion of the Court

 Defendant raises four arguments on appeal: (1) whether the trial court erred

by concluding a substantial change in circumstances affecting the welfare of the child

occurred since the entry of the 22 November 2013 and 21 February 2014 orders; (2)

whether the trial court erred in finding defendant is in “absolute denial” of the minor

child’s medical problems; (3) whether the trial court erred by failing to admit a letter

from a certified pediatric nurse practitioner into evidence; and (4) whether the trial

court erred in concluding it is in the minor child’s best interest for plaintiff to have

sole legal and primary physical custody. We address each argument in turn.

 A. Substantial Change in Circumstances

 Defendant argues the trial court erred by concluding a substantial change in

circumstances affecting the welfare of the child occurred since the entry of the

22 November 2013 and 21 February 2014 orders. We disagree.

 “A trial court may order the modification of an existing child custody order if

the court determines that there has been a substantial change of circumstances

affecting the child’s welfare and that modification is in the child’s best interests.”

Spoon v. Spoon, 233 N.C. App. 38, 41, 755 S.E.2d 66, 69 (2014) (citation omitted). Our

court reviews a trial court’s decision to modify an existing custody order for: “(1)

whether the trial court’s findings of fact are supported by substantial evidence; and

(2) whether those findings of fact support its conclusions of law.” Id. (citation

omitted). “[W]hether changed circumstances exist is a conclusion of law” that we

 -4-
 PEELER V. JOSEPH

 Opinion of the Court

review de novo. Thomas v. Thomas, 233 N.C. App. 736, 739, 757 S.E.2d 375, 379

(2014) (citation omitted).

 “The reason behind the often stated requirement that there must be a change

of circumstances before a custody decree can be modified is to prevent [r]elitigation

of conduct and circumstances that antedate the prior custody order[,]” which

“prevents the dissatisfied party from presenting those circumstances to another court

in the hopes that different conclusions will be drawn.” Newsome v. Newsome, 42 N.C.

App. 416, 425, 256 S.E.2d 849, 854 (1979). Accordingly, “courts may only consider

events which occurred after the entry of the previous order” when deciding whether

a substantial change in circumstances occurred, and information previously disclosed

to the court prior to the hearing on the motion to modify custody is res judicata with

regard to a substantial change in circumstances determination. Woodring v.

Woodring, 227 N.C. App. 638, 646, 745 S.E.2d 13, 20 (2013) (citations omitted).

 However, a trial court treats facts that antedate the original custody order

differently when they were not disclosed to the court before the original order was

entered. Consistent with the reason behind the substantial change in circumstances

requirement, to prevent relitigation of conduct and circumstances, facts previously

undisclosed are not barred by res judicata and may be considered when evaluating

whether a substantial change in circumstances has occurred. Id.

 -5-
 PEELER V. JOSEPH

 Opinion of the Court

 Plaintiff’s 30 August 2013 Rule 35 motion alleged the minor child had been

diagnosed with chronic constipation, external hemorrhoid, and fecal impaction. The

motion further alleged that due to:

 a history of mistrust and/or disdain for [plaintiff] . . . the
 parties are generally unable to be on one (1) accord as it
 relates to the care and treatment of the minor child. As a
 result, when [plaintiff] communicated [medical
 information about the child] to [defendant] she disregarded
 it and refused to follow the medical treatment plan . . .
 because she believed that the information was contrived
 and created by [plaintiff].

Plaintiff’s motion requested the court:

 1. Order the minor child to undergo a full physical
 evaluation to determine the health of the minor child as
 it relates to constipation, allergies, and/or excema [sic].

 2. Direct the parties to follow any and all
 recommendations of the court appointed pediatrician.

 3. For such other and further relief as the Court deems
 just and proper.

 In its 22 November 2013 and 21 February 2014 orders, the trial court did not

address whether the child would undergo a physical evaluation by a court ordered

pediatrician. Instead, the trial court vested defendant with the power to make

decisions regarding health, apparently addressing the allegation that the parties had

“been generally unable to agree on a proper medical protocol for the minor child.”

There is no evidence in the record that the trial court considered the child’s specific

 -6-
 PEELER V. JOSEPH

 Opinion of the Court

health needs or was aware that plaintiff believed the child had allergies when

drafting the 22 November 2013 or 21 February 2014 order.

 On 24 October 2016, plaintiff filed another Rule 35 and Rule 706 motion, and

moved to modify custody on 28 October 2016. In both motions, plaintiff again alleged

“the parties are generally unable to be on one (1) accord as it relates to the care and

treatment of the minor child.” Plaintiff also alleged there was “an impassable

deadlock on whether the minor child has a dairy intolerance and/or food allergy[,]”

and that “[t]his issue has permeated through every other aspect of the minor child’s

life.” Plaintiff alleged he observed symptoms such as eczema flare ups, constipation,

hives and bumps that led him to believe the minor child has allergies that need to be

addressed. Additionally, plaintiff obtained blood allergy testing for the minor child

that indicated she has a milk allergy.

 The trial court appointed Dr. Green as an expert witness to evaluate whether

the minor child has food allergies and/or intolerances. Dr. Green found that the minor

child is allergic to cow’s milk, egg white, and wheat, and has delayed reactions to

dairy, gluten, tapioca, teff, and quinoa. Despite these findings, defendant continued

to deny the minor child has allergies. Accordingly, the trial court found a substantial

change in circumstances based on the finding that “the minor child suffers from food

allergies, chronic constipation, eczema, skin problems and the like to a severe level[,]”

and defendant is in “absolute denial of her child’s” medical problems.

 -7-
 PEELER V. JOSEPH

 Opinion of the Court

 Defendant argues that a change in circumstances did not occur because “the

issue of [the minor child’s] food allergies had already been raised by [plaintiff] prior

to the 29 October 2013 custody review hearing[.]” We disagree.

 Although plaintiff had concerns that the minor child had allergies at the time

the court’s 21 February 2014 custody order was entered and requested that the court

order a medical evaluation to determine whether the child had allergies, the order

only addresses the parties’ inability to agree on a medical treatment plan and there

is no evidence in the record that the minor child’s specific medical issues were

considered by the trial court. Nevertheless, there was a change in factual

circumstances since the entry of the original child custody order, not just in what was

disclosed or considered by the court. Specifically, plaintiff alleged the minor child

exhibited new symptoms: eczema, hives, and bumps, and offered results from a blood

test that was not performed until after the entry of the 21 February 2014 order that

indicated the minor child has an allergy. Furthermore, the court-appointed expert

determined that the minor child has allergies, which constitutes a change in

circumstances affecting the minor child.

 Therefore, defendant’s argument is without merit. The findings of fact related

to the minor child’s allergies were appropriately considered by the trial court, and

sufficient to support the trial court’s conclusion that a substantial change in

circumstances occurred.

 -8-
 PEELER V. JOSEPH

 Opinion of the Court

 B. Finding of Fact 16

 Next, defendant argues finding of fact 16 is not supported by substantial

evidence.

 Finding of fact 16 found: “[defendant] is in absolute denial of her child’s

problems medically. She has refused to take steps to alter her diet for the minor

child’s benefit.” Defendant contends this finding is not supported by substantial

evidence because her opinion that the minor child does not have a food allergy is

supported by other medical professionals in the record. However, defendant does not

challenge any other finding of fact, therefore, all other findings are “presumed to be

supported by competent evidence and [are] binding on appeal.” Koufman v. Koufman,

330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citations omitted). Significantly, the

following findings of fact are unchallenged, and therefore conclusive on appeal:

 11. Plaintiff/Father has obtained blood allergy testing
 results that indicated that the minor child has a milk
 allergy. Plaintiff/Father has repeatedly asked
 Defendant/Mother not to give the minor child milk.
 Defendant/Mother has refused to acknowledge that
 the minor child has a milk allergy. Still to this day,
 Defendant/Mother does not believe that the minor
 child has a milk allergy.

 12. The Court appointed an expert to get to the bottom of
 what is going on with the minor child medically. Dr.
 Akiba Green . . . was the court appointed expert to
 determine what was going on with the minor child.

 13. Dr. Green evaluated the minor child and did extensive
 testing beyond the normal allergy testing. His

 -9-
 PEELER V. JOSEPH

 Opinion of the Court

 findings were that the minor child is allergic to cow’s
 milk, egg white and wheat. He also found that the
 minor child has delayed reactions to dairy, gluten,
 tapioca, teff, and quinoa.

 14. Dr. Green recommended long term elimination of rice
 and oats because the minor child’s reaction to them is
 similar to gluten. He found that the minor child had
 “leaky gut,” blood sugar problems and was trending
 towards diabetes.

 15. The Court finds that the minor child has a history of
 chronic constipation, hemorrhoids, fissures, eczema,
 hives and other symptoms that Defendant/Mother
 completely discounts or denies that the symptoms
 exist. Defendant/Mother continues to deny the issues,
 despite the fact that the minor child was seen as early
 as June 2017 for stomach issues while in
 Defendant/Mother’s care.

These uncontested findings of fact provide substantial support for the court’s

determination in finding of fact 16 that the mother is in denial of the child’s medical

condition and her refusal to take steps to remedy the same. Because the court’s

uncontested findings show the child suffers from health conditions that need to be

treated, the fact that defendant has chosen to believe other opinions does not make

finding of fact 16 incorrect or unsupported by substantial evidence. Therefore,

defendant’s argument is without merit.

 C. Admissibility of Opinion Letter

 Defendant argues the trial court erred by excluding a 13 July 2017 letter from

a certified pediatric nurse practitioner, Ms. Deanna Whitley, that reviews Dr. Green’s

 - 10 -
 PEELER V. JOSEPH

 Opinion of the Court

report on the minor child’s health. Defendant contends this letter is part of the minor

child’s medical records from Cabarrus Pediatrics, and should have been admitted

under the business records exception to the hearsay rule. We disagree.

 The standard of review on admissibility of evidence is abuse of discretion. In

re Goddard & Peterson, PLLC, __ N.C. App. __, __, 789 S.E.2d 835, 842 (2016). Rule

801 of the North Carolina Rules of Evidence defines hearsay as “a statement, other

than one made by the declarant while testifying at the trial or hearing, offered in

evidence to prove the truth of the matter asserted.” N.C. Gen. Stat. § 8C-1, Rule

801(c) (2017). Hearsay is generally not admissible at trial, unless otherwise allowed

by statute or the North Carolina Rules of Evidence. N.C. Gen. Stat. § 8C-1, Rule 802.

Deriving from the traditional business records exception, Rule 803(6) of the North

Carolina Rules of Evidence establishes an exception to the general exclusion of

hearsay for records of regularly conducted activity, which the rules define as:

 A memorandum, report, record, or data compilation, in any
 form, of acts, events, conditions, opinions, or diagnoses,
 made at or near the time by, or from information
 transmitted by, a person with knowledge, if (i) kept in the
 course of a regularly conducted business activity and (ii) it
 was the regular practice of that business activity to make
 the memorandum, report, record, or data compilation, all
 as shown by the testimony of the custodian or other
 qualified witness, or by affidavit or by document under seal
 under Rule 902 of the Rules of Evidence made by the
 custodian or witness, unless the source of information or
 the method or circumstances of preparation indicate lack
 of trustworthiness. Authentication of evidence by affidavit
 shall be confined to the records of nonparties, and the

 - 11 -
 PEELER V. JOSEPH

 Opinion of the Court

 proponent of that evidence shall give advance notice to all
 other parties of intent to offer the evidence with
 authentication by affidavit. The term “business” as used in
 this paragraph includes business, institution, association,
 profession, occupation, and calling of every kind, whether
 or not conducted for profit.

N.C. Gen. Stat. § 8C-1, Rule 803(6).

 The exhibit in question was a letter authored by a certified nurse practitioner

at the request of defendant and her counsel. The letter specifically refutes Dr. Green’s

report, and appears to have been drafted to be submitted to the trial court for this

purpose. As pediatrician offices are not in the regular practice of producing opinion

letters on expert reports for court, this letter fails to meet Rule 803(6)’s requirements

that the record was kept in the course of a regularly conducted business activity, and

that it was the regular practice of that business activity to make the memorandum,

report, record, or data compilation. See id. Therefore, the trial court did not abuse

its discretion by excluding the letter from evidence.

 D. Best Interests Determination

 As her final argument, defendant contends that the trial court abused its

discretion by concluding that it is in the minor child’s best interests for plaintiff to

have sole legal and primary physical custody of the minor child because the trial court

based its “best interest” analysis almost exclusively on the trial court’s findings that

defendant has failed to acknowledge and manage the minor child’s medical issues.

 - 12 -
 PEELER V. JOSEPH

 Opinion of the Court

 “Once the trial court makes the threshold determination that a substantial

change has occurred, the trial court then must consider whether a change in custody

would be in the best interests of the child.” West v. Marko, 141 N.C. App. 688, 691,

541 S.E.2d 226, 228 (2001) (citation omitted). “As long as there is competent evidence

to support the trial court’s findings, its determination as to the child’s best interests

cannot be upset absent a manifest abuse of discretion.” Metz v. Metz, 138 N.C. App.

538, 541, 530 S.E.2d 79, 81 (2000) (citation omitted). Here, defendant only challenged

one finding of fact, finding of fact 16, which, as discussed supra, is supported by

substantial evidence. Therefore, all of the findings of fact are binding on appeal, and

the best interests determination cannot be upset absent a manifest abuse of

discretion. Id. (citation omitted).

 Where, as here, the trial court’s findings of fact found defendant has refused to

acknowledge the minor child’s allergies even though extensive, court-ordered testing

found that these allergies exist, the trial court did not abuse its discretion by

concluding it was in the minor child’s best interests for plaintiff to have sole legal and

primary physical custody to promote the minor child’s general welfare and health.

 III. Conclusion

 For the forgoing reasons, we affirm the 3 November 2017 order.

 AFFIRMED.

 Judge INMAN concurs.

 - 13 -
 PEELER V. JOSEPH

 Opinion of the Court

Judge TYSON dissents by separate opinion.

 - 14 -
 No. COA18-488– Peeler v. Joseph

 TYSON, Judge, dissenting.

 The majority’s opinion concludes a substantial change related to J.J.’s health

occurred after the adjudication and entry of the November 2013 permanent custody

order, which supported a modification of custody. Upon review of the extensive

record, the same issues concerning J.J.’s health were before the trial court before the

entry of, and had been adjudicated prior to, the November 2013 order. No substantial

change in circumstances exists to support a modification. The trial court’s November

2017 order modifying custody should be reversed. I respectfully dissent.

 I. Additional Factual Background

 In their recitation of the facts, the majority’s opinion fails to include J.J.’s

extensive medical history and how it relates to the entry of the custody orders. The

first permanent custody order of record was entered on 14 May 2013, and granted the

parties joint legal custody, with primary physical custody to Defendant-mother. Over

the next four months, beginning two days after the entry of that May 2013 order, J.J.

was seen by a number of competent and qualified pediatricians and specialists

concerning possible allergies. Her extensive medical history is reduced below to the

most relevant visits.

 On 16 May 2013, Plaintiff took J.J. to Dr. Michael Bean of University

Pediatrics, where she was diagnosed with chronic constipation, external hemorrhoid,

and fecal impaction. J.J. was prescribed Miralax for her constipation and was

referred to Dr. Susan Hungness at Carolina Asthma & Allergy Center to test for
 PEELER V. JOSEPH

 Tyson, J., dissenting

potential allergies. J.J.’s skin tests were negative for pollens, molds, inhalants, milk,

milk proteins casein and lactalbumin, and sesame seeds. Dr. Hungness did not find

or conclude J.J.’s constipation was related to a milk allergy. J.J.’s blood allergy tests

indicated a low to moderate level reaction to milk, casein, and lactalbumin. Dr.

Hungness recommended J.J. to avoid dairy products for two to three months, with

further restriction to be determined by a gastroenterologist.

 Defendant-mother took J.J. to Dr. Roopen Patel, also a physician at Carolina

Asthma & Allergy Center, for additional testing on 6 August 2013. Skin tests for

milk and soy protein allergies were negative, but Dr. Patel recommended continued

monitoring for allergic reactions. Defendant also took J.J. to Dr. Lay Cheng at

Carolina Pediatric Gastroenterology Clinic on 20 August 2013, as a requested follow-

up to a previous appointment made by Plaintiff.

 Dr. Cheng suspected J.J.’s constipation was “functional, possibly due to

frequent changes in environment,” and “reassured” Defendant that J.J. did not have

any indication of a milk allergy, “clinically or by allergist’s evaluation.” Dr. Cheng

recommended, inter alia, for J.J. to continue taking Miralax and consuming two cups

of calcium and vitamin D fortified milk each day. Dr. Cheng also noted the

“communication difficulties” between the parent-parties, and recommended the

parties limit J.J.’s medical care providers to one per specialty to avoid confusion, limit

costs, and reduce the unnecessary duplication of tests.

 2
 PEELER V. JOSEPH

 Tyson, J., dissenting

 After a hearing on Plaintiff’s August 2013 motions, the trial court entered a

hand-written order modifying custody on 22 November 2013 and an identical typed

order was filed over two and a half months later on 7 February 2014. Both orders

found and ordered the parties to share physical custody on an alternating two week

schedule, and vested Plaintiff-father with the right to make decisions regarding J.J.’s

education and vested Defendant-mother with the right to make decisions regarding

J.J.’s health.

 Defendant took J.J. for further allergy testing by Dr. Laura Jean Larrabee at

Cabarrus Pediatrics on 28 July 2014. This test showed low positive reactions to egg

whites and cow’s milk and borderline reactions to scallops and gluten. On 22 October

2014, Plaintiff, against the express conditions set forth in the permanent custody

order, took J.J. to Dr. Jennifer Caicedo of Allergy, Asthma & Immunology Relief for

additional allergy testing. Dr. Caicedo noted J.J.’s new blood tests indicated a

decrease in reaction to milk. She recommended additional skin testing to milk and

“open challenges” to milk and eggs in the office.

 Both parties met with Dr. Larrabee on 4 November 2014. Dr. Larrabee advised

that J.J.’s indicators for allergies were fairly low, and may not actually indicate any

allergies being present, but the skin testing recommended by Dr. Caicedo “would be

a more accurate way to determine true allergy.” She also relayed that J.J.’s

 3
 PEELER V. JOSEPH

 Tyson, J., dissenting

gastrointestinal symptoms “could certainly be related to the amount of stress and

discord related to the continuous friction” being generated between the parties.

 J.J. underwent skin testing and oral challenge for milk on 17 November 2014

at Allergy Asthma & Immunology Relief. The skin test showed no reaction to milk

and J.J. passed the oral challenge “without complication.” J.J. also passed her oral

challenge for eggs on 9 March 2015.

 Plaintiff, again, against the conditions set forth in the November 2013 custody

order, took J.J. for renewed and further allergy testing on 18 August 2016. J.J.’s

blood test indicated a low level reaction to egg white and milk. Plaintiff and his

fiancé, Iris Wilson, consulted with Dr. Caicedo concerning the results. Dr. Caicedo

noted Plaintiff and Ms. Wilson had “determined themselves,” without any supporting

medical evidence, that J.J. had “delayed” reactions to milk and eggs, and believe J.J.’s

eczema, development of environmental allergies, and chronic constipation were

linked to her egg and milk allergies. Dr. Caicedo stated the results were not

indicative of food allergies, and advised Plaintiff and Ms. Wilson that J.J.’s symptoms

were not a manifestation of food allergies.

 Apparently unhappy with the opinion of Dr. Caicedo and the multiple other

specialists J.J. had seen, Plaintiff filed a Rule 35 and Rule 706 motion on 24 October

2016, requesting the trial court to appoint a medical expert “to conduct an evaluation

and/or oral challenge” of J.J., due to the parties inability to “agree upon appropriate

 4
 PEELER V. JOSEPH

 Tyson, J., dissenting

medical care” for J.J. Plaintiff also filed a motion to modify custody on 28 October

2016, which alleged changed circumstances including the parties’ conflict over J.J.’s

medical care.

 Prior to the hearing on Plaintiff’s motions, Defendant took J.J. to Allergy

Partners of Rowan, where a skin test was performed for the purported milk allergy.

That skin test result also returned as negative for a milk allergy and was consistent

with earlier tests.

 II. No Change in Circumstances

 A permanent custody order may not be modified unless there has been a

substantial change in circumstances affecting the welfare of the child. Peters v.

Pennington, 210 N.C. App. 1, 13, 707 S.E.2d 724, 734 (2011) (emphasis supplied). A

trial court’s findings of fact are conclusive on appeal if supported by substantial

evidence, which “a reasonable mind might accept as adequate to support a

conclusion.” Everette v. Collins, 176 N.C. App. 168, 170, 625 S.E.2d 796, 798 (2006).

A trial court’s conclusions of law are conclusive if supported by the findings of fact.

Id. at 171, 625 S.E.2d at 798.

 “Whether a change of circumstances affecting the welfare of the child has or

has not occurred is a conclusion of law.” Jordan v. Jordan, 162 N.C. App. 112, 116,

592 S.E.2d 1, 4 (2004). We review conclusions of law de novo. Smith v. Smith, 247

N.C. App. 135, 143, 786 S.E.2d 12, 20 (2016).

 5
 PEELER V. JOSEPH

 Tyson, J., dissenting

 “[W]hen evaluating whether there has been a substantial change in

circumstances, courts may only consider events which occurred after the entry of the

previous order, unless the events were previously undisclosed to the court.” Woodring

v. Woodring, 227 N.C. App. 638, 645, 745 S.E.2d 13, 20 (2013) (emphasis supplied).

This requirement “is to prevent relitigation of conduct and circumstances that

antedate the prior custody order” and have already been adjudicated and ruled upon.

Newsome v. Newsome, 42 N.C. App. 416, 425, 256 S.E.2d 849, 854 (1979) (emphasis

original).

 The majority’s opinion asserts “there is no evidence in the record that the trial

court considered the child’s specific health needs or was aware that [P]laintiff

believed the child had allergies” when it drafted the November 2013 order. However,

the Rule 35 motion requested a “full physical evaluation to determine the health of

the child as it relates to constipation, allergies, and/or excema [sic].”

 Further, prior to the 29 October 2013 hearing, Plaintiff had served numerous

subpoenas to doctors involved in J.J.’s care, requesting production of medical records

or to appear at the hearing. Subpoenas were sent by Plaintiff to Dr. Hungness and

Dr. Patel, of Carolina Asthma & Allergy Center, who had conducted allergy testing

on J.J.; Dr. Chang, of Carolina Pediatric Gastroenterology, who had reviewed some

of J.J.’s allergy tests; and Cabarrus Pediatrics, J.J.’s primary care practice with

Defendant.

 6
 PEELER V. JOSEPH

 Tyson, J., dissenting

 The November 2013 order also took into account medical decisions, and

expressly allocated the authority to decide J.J.’s medical care to Defendant. While

there was further conflict regarding J.J.’s purported allergies after the November

2013 order, that conflict arose as a result of Plaintiff’s and his fiancé’s failure to

adhere to that order. Plaintiff’s desire to relitigate the matter of J.J.’s medical care

is not a change in circumstances requiring a modification of the custody agreement.

See Newsome, 42 N.C. App. at 425, 256 S.E.2d at 854.

 The majority’s opinion asserts Plaintiff’s October 2016 motions identify “new”

symptoms of eczema, hives, and bumps, and Plaintiff had obtained a blood allergy

test subsequent to the November 2013 order indicating J.J. had milk allergies.

Plaintiff’s August 2013 Rule 35 motion also requested the trial court order a “full

physical evaluation to determine the health of [J.J.] as it relates to constipation,

allergies, and/or excema [sic].”

 The subsequent blood allergy tests indicated J.J. had low level milk allergies.

After the 2014 test, Dr. Larrabee noted such a low level may not actually indicate an

allergy. She also noted that skin testing is “a more accurate way to determine true

allergy” over blood tests. After the blood allergy tests in 2016, Dr. Caicedo informed

Plaintiff the low-level results were not indicative of an allergy, but Plaintiff had

already made up his mind despite all medical evidence to the contrary.

 7
 PEELER V. JOSEPH

 Tyson, J., dissenting

 The trial court appointed Dr. Akiba Green of Lake Norman Health and

Wellness to conduct an evaluation to ascertain whether or not J.J. had food allergies.

Dr. Green is a chiropractor with an undergraduate degree in health education, a

doctor of chiropractic degree from Sherman College of Chiropractic, and various

certifications, including a 200-hour certification through “Functional Medicine

University.” Dr. Green conducted blood tests and opined J.J. had allergies to cow’s

milk, wheat, and egg white, and delayed reactions to oats, rice, tapioca, teff, and

quinoa, in contravention to the numerous other specialists’ opinions.

 III. Conclusion

 After review of the extensive medical records provided for J.J., no substantial

evidence, which “a reasonable mind might accept as adequate to support a

conclusion,” exists to support a finding there was a substantial change in

circumstances to modify the order. See Everette, 176 N.C. App. at 170, 625 S.E.2d at

798. The issue of J.J.’s purported allergies was present prior to the entry of the

November 2013 order.

 Testing, by at least four medical doctors, including two allergy specialists, prior

to that order indicated J.J. had no allergies. Subsequent testing by Defendant, and

also by Plaintiff, contrary to the mandates of the November 2013 order, indicate the

same. Those doctor visits do indicate, however, Plaintiff and his fiancé, had

“determined [for] themselves” that J.J. had delayed allergic reactions, contrary to the

 8
 PEELER V. JOSEPH

 Tyson, J., dissenting

diagnoses of the many previous physicians and at least three who were consulted

after the entry of the November 2013 order.

 Without any medical support, Plaintiff has become convinced his daughter has

suffered from food allergies since she was three years old. Despite extensive allergy

testing, physician consultation, and a court order dictating Defendant was vested

with the right to make decisions concerning J.J.’s health, Plaintiff persisted in

violation of Defendant’s vested authority. Each time Plaintiff did not get the

diagnosis he wanted, he sought out other doctors, and eventually enlisted the trial

court to relitigate an issue which had existed for years and had previously been

adjudicated. See Newsome, 42 N.C. App. at 425, 256 S.E.2d at 854. Plaintiff’s

repeated subjecting of his young daughter to invasive examinations, skin pricks, and

blood tests to achieve his predetermined and unfounded notions borders on child

abuse.

 No substantial evidence exists to support a finding that a substantial change

in circumstances had occurred since the entry of the November 2013 custody order.

The alleged “changed circumstances,” J.J.’s medical care and purported allergies,

were apparent to, and litigated before, the trial court prior to the entry of the

November 2013 order and were not to be reconsidered or relitigated by the trial court.

See Woodring, 227 N.C. App. at 645, 745 S.E.2d at 20.

 9
 PEELER V. JOSEPH

 Tyson, J., dissenting

 Without a showing of a substantial change of circumstances by Plaintiff, the

trial court cannot reach the consideration of the best interests of the child, and erred

by modifying an existing permanent custody order. Peters, 210 N.C. App. at 13, 707

S.E.2d at 734.

 The 3 November 2017 order modifying custody should be reversed. I

respectfully dissent.

 10