An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-917

Filed 3 December 2025

Randolph County, No. 20CVD001034-750

CHELSEA THERESA GLOVER,

v.

STACY TY TROGDON.

Appeal by defendant from a child custody modification order entered 21 March 2024 by Judge Joseph M. Buckner in Randolph County District Court. Heard in the Court of Appeals 19 March 2025.

*Law Firm Carolinas, by Carole R. Albright, for defendant.*

*Megerian & Wells, by Margaret J. Megerian, for plaintiff.*

FREEMAN, Judge.

Defendant appeals from a child custody modification order entered 21 March 2024. On appeal, defendant argues the trial court erred by: (1) concluding it was in the best interest of the minor child to award plaintiff sole custody and to leave defendant's visitation with the child at plaintiff's discretion (2) concluding a substantial change in circumstances affecting the welfare of the child occurred to

modify child custody; (3) concluding defendant brought a frivolous motion for the purpose of harassing plaintiff and needlessly increasing the cost of litigation; and, (4) awarding attorney's fees to plaintiff. Because the trial court failed to make the appropriate factual findings and conclusions of law as to whether there was a substantial change in circumstances affecting the welfare of the child, we vacate and remand that portion of the order modifying child custody. We affirm the trial court's imposition of sanctions, but remand for further factual findings as to the award.

## I. Factual and Procedural Background

Plaintiff and defendant were married on 6 June 2015, separated on 30 May 2020, and later divorced. The parties share one child.

On 9 June 2022, plaintiff filed a complaint for child custody, child support, equitable distribution and attorney's fees. Defendant filed an answer to plaintiff's complaint; moved to change venue and expedite the hearing; and counterclaimed for temporary custody on 17 June 2020. On 19 June 2020, the parties entered into a consent order for temporary child custody. In that order, the parties agreed to share temporary, joint, legal and physical custody of the child. That consent order also stipulated the matter be heard outside of Randolph County. On 4 August 2020, the parties entered into a consent order for interim distribution wherein the minor child's belongings were spilt and distributed in half between plaintiff and defendant. On 13 August 2021, the parties entered into a consent order for permanent child custody,

where they agreed to share joint, legal and physical custody of the child.

On 30 November 2021, plaintiff filed a motion to modify child custody and the parties subsequently entered into another consent order for child custody on 6 March 2023. In that order, the parties agreed to share joint, legal and physical custody of the child, appoint Rebecca Poole as a parenting coordinator, limit all contact unless related to the child, and respond to questions related to the child in a timely manner. The parties further agreed to each pay one-half of the parenting coordinators fees, unless "otherwise determined by the parenting coordinator."

On 20 November 2023, the trial court entered an order appointing Shelley Campen Brown as a parenting coordinator for a term of two years. The plaintiff and defendant each remained responsible for her retainer and fees unless otherwise determined by the parenting coordinator. However, that order specified the parenting coordinator could modify these fees if they found: a parent was using their "services unnecessarily, and as a result," caused the other parent greater expense, or "if one parent" was "acting in bad faith." Further, the order stated the trial court had the authority to determine allocation of parenting coordinator fees, including reimbursement to one parent.

On 13 December 2023, plaintiff filed a motion for contempt and to show cause alleging defendant failed to pay the necessary fees and schedule a meeting with the parenting coordinator. On the same day, defendant filed a motion to modify custody and visitation.

Defendant later filed an amended motion to modify custody on 10 January 2024. In that motion, defendant alleged plaintiff "committed 20+ counts of contempt of the consent custody order." Defendant stated that plaintiff: refused to communicate regarding decisions affecting the child; used the child as a conduit for communicating and exchanging objects with defendant; disparaged defendant in front of the child, and thus, interfered with or otherwise attempted to diminish the love, affection, or respect that the child has for the defendant; and displayed emotional instability in the presence of the child. Defendant further requested the trial court to order a psychological evaluation for plaintiff. The next day, the trial court entered an order for plaintiff to appear and show cause.

On 18 January 2024, plaintiff filed a response to defendant's motion and countered with her own motion to modify custody. In that motion, plaintiff alleged defendant: harassed plaintiff; refused to follow recommendations from the child's physician; failed to cooperate with the parenting coordinator; and that defendant brought his motion to modify custody and visitation for the improper purpose of needlessly increasing the cost of litigation and harassing plaintiff. Defendant filed a response to that motion on 23 February 2024.

On 12 March 2024, parties' motions were heard. At the hearing, the trial court received testimony from Shelley Brown, the parenting coordinator. Brown testified plaintiff had signed the necessary paperwork and paid her half of the retainer for the appointment of the parenting coordinator, whereas defendant had not. Further, the

4

trial court received a Parenting Capacity Evaluation Report into evidence dated 14 June 2022.

On 21 March 2024, the trial court entered an order granting plaintiff sole legal and physical custody of the child and awarding plaintiff's requested attorney's fees. Throughout the order, the trial court quoted substantial portions of the 14 June 2022 Parenting Capacity Evaluation Report. At issue on appeal, the trial court found and ordered:

> 15. The Court next heard Defendant's motions to find Plaintiff in criminal contempt filed December 13, 2023 and an amended version on January 10, 2024. The Court heard the following in support of Defendant's motions:
>
>> a. Testimony of Defendant;
>>
>> b. Defendant's verified motions and 39-page supporting documents;
>>
>> c. A printed record of emails between the parties since the March 5, 2023 order, entered without objection as Plaintiff's Exhibit 2.
>
> 16. The Defendant failed to prove beyond a reasonable doubt that Plaintiff was in willful violation of the March 5, 2023 Custody Order.
>
> 17. The Court considers the evidence and testimony presented regarding the parties' motions for contempt for the purposes of custody modification herein.
>
> . . . .
>
> 21. The Court entered, without objection, a Parenting Capacity Evaluation Report regarding Defendant dated June 14, 2022, by Carolina Psychology Group as Plaintiff's exhibit 3. This report was completed pursuant to a consent

order entered March 11, 2022 and the recommendations therein were known to the parties when they entered into the March 5, 2023 consent order.

. . . .

25. Despite the above recommendation and consent order agreeing to appoint a parenting coordinator to aid with communication and decision-making, Defendant refused to utilize a parenting coordinator and continuously emailed Plaintiff questions about her parenting style and fitness as a parent. Defendant's January 10, 2024 motion for contempt claims that Plaintiff "refused to have complete and thorough conversations with Defendant regarding co-parenting and the minor child despite numerous efforts by the Defendant" and that Plaintiff failed to respond within 24 hours to Defendant's questions regarding the minor child on 26 occasions. Examples of the questions that Plaintiff failed to respond to that were cited in Defendant's motion for contempt include:

> a. "Are you stating that you believe it's okay to lie in some circumstances but not in others?"

> b. "Oh really? So if she decides to wear something inappropriate for the weather or her age you will allow her to wear it?"

> c. "Can you please tell me why you think it's important for her to occasionally experience a dentist appointment with just one parent?"

> d. "Have you done any research before making this decision?"

> e. An email attaching a seven-page article about co-parenting states, "I'm requesting that you take that document and notate what you disagree with in there and send it back to me for my review."

. . . .

28. Since the March 5, 2023 order, Defendant has demonstrated an unwillingness or inability to communicate in a reasonable manner with the Plaintiff regarding their child's needs. Defendant cannot or will not share any control or decision making with Plaintiff and will not comply with court orders, including consent orders, that would help improve communication.

29. From approximately October 20, 2023 to November 3, 2023, the Defendant sent numerous emails questioning Plaintiff about her decision to have the child administered the flu vaccine despite the prior order directing that "unless otherwise agreed by the parties, the minor child will receive any and all and vaccines and preventative care recommended by the child's primary care provider." Plaintiff ultimately told Defendant on November 4, 2024 "We can't engage in this anymore. Let's wait for the parenting coordinator." Defendant cited this as a violation of the 24 hour response provision in his contempt motion.

30. Defendant informed the child that she could get her ears pierced in September of 2023. On September 18, 2023, the Defendant emailed Plaintiff informing her about an appointment the next day to pierce the child's ears. Plaintiff responded that she believed the child was too young and did not agree with the decision to pierce her ears, and Defendant promising the child this without consulting Plaintiff was a violation of the custody order. Defendant asked the Plaintiff to state her reasons for objecting to the ear piercing, and Plaintiff responded with a list of several reasons, including the minor child was too young to manage the responsibilities. Defendant responded to each of Plaintiff's concerns and then indicated he had appropriately addressed her concerns and was therefore proceeding with the ear piercing. Defendant also asked "Can you point to where it says on our consent order that she can't get her ears pierced?" Defendant cites Plaintiff's failure to respond to him in his motion for contempt as a violation of the 24-hour response provision.

31. On or about April 20, 2023 the Defendant went to have

lunch with the minor child at school for his birthday. Defendant emailed the Plaintiff during his lunch that the child stated she had made him a birthday card and Plaintiff had taken the card away. Minutes later, Defendant emailed the Plaintiff and said the "truth came out," and followed up with another email stating the child admitted she had not made Defendant a birthday card and Plaintiff had not taken the card away. Defendant then demanded of Plaintiff, "What do you think we should do about this lying?" which started a days-long back and forth with Defendant demanding that Plaintiff outline what punishment she would give the child for lying about his birthday card and questioning Plaintiff about her discipline. Defendant cites Plaintiff's failure to respond to him in his motion for contempt as a violation of the 24-hour response provision.

32. Defendant has made inappropriate statements to the child while on nightly video calls where Plaintiff can hear. For example, when Plaintiff took the child to get her flu shot in October 2023 (pursuant to the custody order, the parents alternate taking the child to appointments), the Defendant said to the child, "I'm sorry I wasn't at your appointment; your mom wouldn't let me go."

33. In several email exchanges, including the messages related to piercing the minor child's ears, Plaintiff indicated that the disagreement would benefit from the involvement of the parenting coordinator.

34. The minor child sometimes gets very emotional and appears distressed transiting between homes and often takes a day to adjust when returning to Plaintiff's home.

35. Despite the behavior found herein, Plaintiff has entered multiple consent orders for shared custody with Defendant for the benefit of the minor child. Plaintiff has made good faith attempts to co-parent despite the history of domestic violence between the parties and Defendant's unreasonable questioning. Plaintiff has taken reasonable steps to protect herself and the child from exposure to

Defendant's outbursts while maintaining equal custody, i.e. the DVPO and various terms of the multiple custody orders regarding contact and conduct of the parties. These actions indicate that Plaintiff has consistently put the needs of the minor child above personal conflict with the Defendant.

36. It is appropriate to release the parenting coordinator from this matter due to Defendant's lack of cooperation.

37. Plaintiff is a fit and proper person to have the care, custody, and control of the minor child, and it is in the best interest of the child to grant sole legal and physical custody to the Plaintiff.

38. Based on the evidence presented and the findings herein, the Defendant is not a fit and proper person to exercise custody of the minor child and he has acted in a manner inconsistent with his right to custody. It is in the child's best interest that Defendant's visitation be left at the discretion of the Plaintiff.

39. That Defendant's motions were frivolous and Defendant brought th[ese] motions for the Improper purpose of harassing Plaintiff and needlessly increasing the cost of litigation for Plaintiff.

40. That the above violations of N.C. Gen. Stat[.] [§] 1A-1, Rule 11 merit the imposition of an appropriate sanction by this court against Defendant, including the costs and attorney's fees incurred by Plaintiff in defending against the Plaintiff's ungrounded motions.

41. Plaintiff is an interested party acting in good faith and has insufficient means to defray costs, expenses, and counsel fees incurred as a result of this action, and therefore Plaintiff is entitled to reasonable counsel fees pursuant to N.C. Gen. Stat. § 50-13.6.

42. Attorney Margaret Megerian, counsel for Plaintiff, has submitted an affidavit of attorney fees reflecting $7,085.50 in attorney fees and costs attributable to the pending

motions. This amount is reasonable, and it is appropriate to order the Defendant to pay these fees and costs as set forth herein.

. . . .

3. A substantial change in circumstances affecting the welfare of the minor child has occurred necessitating the change in custody as set forth hereinbelow.

4. Plaintiff is a fit and proper person to have the care, custody, and control of the minor child and it is in the best interest of the child to grant sole and legal physical custody to the Plaintiff.

5. Defendant is not a fit and proper person to exercise custody of the minor child and he has acted in a manner inconsistent with his right to custody. It is in the child's best interest that Defendant's visitation be left at the discretion of the Plaintiff.

6. That Defendant's motions were frivolous and Defendant brought th[ese] motions for the improper purpose of harassing Plaintiff and needlessly increasing the cost of litigation for Plaintiff.

7. Plaintiff is an interest party acting in good faith and has insufficient means to defray costs, expenses, and counsel fees incurred as a result of this action, and therefore Plaintiff is entitled to reasonable counsel fees pursuant to N.C. Gen. Stat. § 50-13.6.

8. Plaintiff is entitled to an award of reasonable attorney fees pursuant to Rule 11(a) of the North Carolina Rules of Civil Procedure.

Defendant timely appealed.

## II.   Jurisdiction

This Court has jurisdiction to review a final judgment from a district court.

N.C.G.S. § 7A-27(b)(2) (2023). As the parties' child custody order is a final judgment, we have jurisdiction to review defendant's appeal.

### III. Standard of Review

"We review an order for modification of custody to determine if the findings of fact are supported by substantial evidence and if the conclusions of law are supported by the findings; the trial court determines the credibility and weight of the evidence." *Johnson v. Lawing*, 289 N.C. App. 334, 337 (2023) (cleaned up). "Whether . . . findings of fact support conclusions of law is reviewable de novo." *Hall v. Hall*, 188 N.C. App. 527, 530 (2008) (emphasis omitted). Therefore, "[i]f the trial court's uncontested findings of fact support its conclusion of law, [this Court] must affirm the trial court's order." *Respess v. Respess*, 232 N.C. App. 611, 614 (2014) (citation omitted); *see also Lawing*, 289 N.C. App. at 337 ("If the findings of fact and conclusions of law are supported, then we review the trial court's decision regarding custody for abuse of discretion." (citation omitted)).

### IV. Discussion

**A. Modification of Existing Child Custody Order**

Here, defendant challenges the trial court's conclusion as to a substantial change in circumstance on two grounds. First, defendant argues that the trial court made inadequate findings as to the effect on the welfare of the child. Second, defendant argues the trial court erred in considering reports that "evidenced events that occurred prior to the entry of the last order."

### 1. *Inadequate Findings*

"[A] trial court may order a modification of an existing child custody order between two natural parents if the party moving for modification shows that a substantial change of circumstances affecting the welfare of the child warrants a change in custody." *Shipman v. Shipman*, 357 N.C. 471, 473 (2003) (cleaned up). Specifically, whether a "change in circumstances can be deemed substantial, whether that change affected the welfare of the minor child, and, finally, why modification is in the child's best interests[,]" must be supported by the trial court's findings of fact." *Id.* at 474–75, 481. Therefore,

> [w]hen reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* at 474 (citations omitted). Generally,

> Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.

*Coble v. Coble*, 300 N.C. 708, 714 (1980).

Our Supreme Court has articulated a two-part inquiry when determining

12

whether to modify an existing child custody order. *See Shipman*, 357 N.C. at 473–75. First, the trial court must ask "whether there was a change in circumstances." *Id*. at 474. Second, the trial court "must examine whether such a change affected the minor child." *Id*. "If . . . the trial court determines that there has been a substantial change in circumstances and that change affected the welfare of the child, the court must then examine whether a change in custody is in the child's best interests." *Id*.

This Court has clarified that "[t]he trial court is not constrained to using certain or specific buzz words or phrases in its order." *Lang v. Lang*, 197 N.C. App. 746, 748 (2009) (cleaned up). But "[u]nless the effect of the change on the children is 'self-evident,' the trial court must find sufficient evidence of a nexus between the change in circumstances and the welfare of the children." *Stephens v. Stephens*, 213 N.C. App. 495, 499 (2011) (citation omitted).

Our Court has recognized "individual changes such as the mere passage of time, increased age of the child, a change in residence, or a change in family composition are not necessarily sufficient changes of circumstances to justify the modification of a custody order." *Cash v. Cash*, 284 N.C. App. 1, 8 (2022). In these circumstances, "the effects of the change on the welfare of the child are not self-evident and therefore necessitate a showing of evidence *directly* linking the change to the welfare of the child." *Shipman*, 357 N.C. at 478.

For example, "changes in children's ages, parent's work schedule, and parent's residence did not support concluding a substantial change in circumstances

13

occurred." *Cash*, 284 N.C. App. at 8 (citing *Frey v. Best*, 189 N.C. App. 622, 637–39 (2008)). Similarly, remarriage and "a change in the custodial parent's residence" alone are not "a sufficient change of circumstances affecting the welfare of the child to justify modification of the child custody order *without* a finding of fact indicating the effect of the [change] on the child." *Id.* (citing *Evans v. Evans*, 138 N.C. App. 135, 140 (2000)) (emphasis added). Recently, our Supreme Court has recognized, "conflict with the parenting coordinator, by itself, is not a substantial change in circumstances unless it affects the welfare of the child." *Durbin v. Durbin*, 918 S.E.2d 832, 839 (N.C. 2025).

This is because "[a]ny one of those changes may or may not constitute a substantial change justifying modification of a custody order;" but "to make this determination, the trial court must consider evidence regarding the effect of the particular change on the child, whether positive or negative." *Cash*, 284 N.C. App. at 8.

> As our appellate case law has previously indicated, before a child custody order may be modified, the evidence *must demonstrate a connection* between the substantial change in circumstances and the welfare of the child, and *flowing from that prerequisite is the requirement that the trial court make findings of fact regarding that connection.*

*Shipman*, 357 N.C. at 474 (emphasis added). Evidence of this connection demonstrates an impact on the child's "physical and emotional wellbeing," *Brewer v. Brewer,* 139 N.C. App. 222, 233 (2000), and is typically presented through medical

14

records or assessments (including those made by a mental health professional), school records, or parties' or the child's testimony, *e.g. Ford v. Wright,* 170 N.C. App. 89, 97–98 (2005); *Warner v. Brickhouse,* 189 N.C. App. 445, 452–53 (2008); *Henderson v. Wittig,* 278 N.C. App. 178, 181–83 (2021). Put simply, "the trial court must consider not only the change, but also if and how that change affects the child and the best interests of the child." *Cash*, 284 N.C. App. at 9.

The trial court's examination ceases, and modification cannot be ordered if the trial court "concludes either that a substantial change has not occurred or that a substantial change did occur but that it did not affect the minor child's welfare[.]" *Shipman*, 357 N.C. at 474. Once the trial court makes affirmative findings as to both questions, then the court "must then examine whether a change in custody is in the child's best interests." *Id.*; *see also, e.g.*, *Davis v. Davis*, 229 N.C. App. 494, 504 (2013) (explaining because the trial court did not conclude there was a substantial change in circumstances, it could not conclude a change affected the welfare of the child, let alone that an effect could be clear.).

Thus, the trial court can only examine whether a change in custody is in the child's best interests after sufficient and affirmative findings of both *Shipman* prongs. *Shipman*, 357 N.C. at 474. Only after the trial court concludes that modification is in the child's best interest may the court modify the custody order. *Id.* Our Supreme Court in *Shipman* cautioned:

> We note that although the content of the trial court's order

15

in the instant case is adequate for our review, the lack of specificity in the order, particularly concerning the findings of fact as to the effect of the changes in circumstances on the child's welfare, has made our review far more difficult. Given different factual circumstances, a slightly more pervasive lack of specificity could necessitate our reversal of a modification order. To avoid further confusion, we would encourage trial courts, when memorializing their findings of fact, to pay particular attention in explaining whether any change in circumstances can be deemed substantial, whether that change affected the welfare of the minor child, and, finally, why modification is in the child's best interests.

*Id*. at 481.

Specifically, "escalating conflict on the part of one or both parents" can constitute a substantial change in circumstance, *Durbin*, 918 S.E.2d at 834, that may adversely affect a child, *Laprade v. Barry*, 253 N.C. App. 296, 303–04 (2017).  Indeed, "a history of poor communication and high conflict may still represent a substantial change in circumstances when those communication problems and conflicts are *presently* having a negative impact on the children's welfare." *Durbin*, 918 S.E.2d at 840 (cleaned up).  Thus, "a parent's unwillingness or inability to communicate in a reasonable manner with the other parent regarding their child's needs *may* adversely affect the child[.]" *Laprade*, 253 N.C. App. at 303–04 (emphasis added).  Because "[i]t is not our role to do a review of all of the transcripts of all of the proceedings to find the information" one party favors, the trial court's factual findings must support its conclusions of law, including "that there was a substantial change of circumstances justifying modification of custody." *Id*. at 302, 304.

16

Here, the trial court found:

28. Since the March 5, 2023 order, Defendant has demonstrated an unwillingness or inability to communicate in a reasonable manner with the Plaintiff regarding their child's needs. Defendant cannot or will not share any control or decision making with Plaintiff and will not comply with court orders, including consent orders, that would help improve communication.

29. From approximately October 20, 2023 to November 3, 2023, the Defendant sent numerous emails questioning Plaintiff about her decision to have the child administered the flu vaccine despite the prior order directing that "unless otherwise agreed by the parties, the minor child will receive any and all and vaccines and preventative care recommended by the child's primary care provider." Plaintiff ultimately told Defendant on November 4, 2024 "We can't engage in this anymore. Let's wait for the parenting coordinator." Defendant cited this as a violation of the 24 hour response provision in his contempt motion.

30. Defendant informed the child that she could get her ears pierced in September of 2023. On September 18, 2023, the Defendant emailed Plaintiff informing her about an appointment the next day to pierce the child's ears. Plaintiff responded that she believed the child was too young and did not agree with the decision to pierce her ears, and Defendant promising the child this without consulting Plaintiff was a violation of the custody order. Defendant asked the Plaintiff to state her reasons for objecting to the ear piercing, and Plaintiff responded with a list of several reasons, including the minor child was too young to manage the responsibilities. Defendant responded to each of Plaintiff's concerns and then indicated he had appropriately addressed her concerns and was therefore proceeding with the ear piercing. Defendant also asked "Can you point to where it says on our consent order that she can't get her ears pierced?" Defendant cites Plaintiff's failure to respond to him in his motion for contempt as a violation of the 24-hour response provision.

17

31. On or about April 20, 2023 the Defendant went to have lunch with the minor child at school for his birthday. Defendant emailed the Plaintiff during his lunch that the child stated she had made him a birthday card and Plaintiff has taken the card away. Minutes later, Defendant emailed the Plaintiff and said the "truth came out," and followed up with another email stating the child admitted she had not made Defendant a birthday card and Plaintiff had not taken the card away. Defendant then demanded of Plaintiff, "What do you think we should do about this lying?" which started a days-long back and forth with Defendant demanding that Plaintiff outline what punishment she would give the child for lying about his birthday card and questioning Plaintiff about her discipline. Defendant cites Plaintiff's failure to respond to him in his motion for contempt as a violation of the 24-hour response provision.

32. Defendant has made inappropriate statements to the child while on nighty video calls where Plaintiff can hear. For example, when Plaintiff took the child to get her flu shot in October 2023 (pursuant to the custody order, the parents alternate taking the child to appointments), the Defendant said to the child, "I'm sorry I wasn't at your appointment; your mom wouldn't let me go."

33. In several email exchanges, including the messages related to piercing the minor child's ears, Plaintiff indicated that the disagreement would benefit from the involvement of the parenting coordinator.

34. The minor child sometimes gets very emotional and appears distressed transiting between homes and often takes a day to adjust when returning to Plaintiff's home.

Here, the trial court's factual findings tell a story of the parties' conflict between themselves and their parenting coordinator. This *may* be a substantial change in circumstances. *See Durbin*, 918 S.E.2d at 840 ("[A] history of poor

18

communication and high conflict *may* still represent a substantial change in circumstances when those communication problems and conflicts *are presently having a negative impact on the children's welfare.*" (emphasis added)). Thus, presuming, without deciding the trial court properly determined there was a substantial change in circumstance, the only factual finding this Court can discern relates to "whether such a change affected the minor child," *Shipman*, 357 N.C. at 474, states that "that minor child sometimes gets very emotional and appears distressed transitioning between homes and often takes days to adjust when returning to the Plaintiff's home."

This Court could *guess* how the parties' conflict, and the parties' conflict with their parenting coordinator effects the welfare of the child. And, there is tension between the fact finding demands of the trial court, and the demands of our precedent. But even though "[t]he trial court is not constrained to using certain or specific buzz words or phrases in its order," *Lang*, 197 N.C. App. at 748 (cleaned up), precedent demands specific findings that logically flow from one another, *Coble*, 300 N.C. at 714.

This is true generally where "[e]vidence must support findings; findings must support conclusions; conclusions must support the judgment . . . . each link in the chain of reasoning must appear in the order itself" and "[w]here there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto." *Id*. However, this is true

narrowly where *Shipman* describes that after a trial court deems a change in circumstances substantial, it should "pay particular attention" to explain "whether *that* change affected the welfare of the minor child." 357 N.C. at 474, 481 (emphasis added). In the present case, the fact "that minor child sometimes gets very emotional and appears distressed transitioning between homes and often takes days to adjust when returning to the Plaintiff's home," could be attributable to anything. **R. p. 34}.**

Although each prong of *Shipman* requires independent analysis, it is undeniable that each factual finding must logically flow from one another. *See id.* at 474. Our precedent demands trial courts to take this scrupulosity a step further, as "[u]nless the effect of the change on the children is 'self-evident,' the trial court must find sufficient evidence of a nexus between the change in circumstances and the welfare of the children." *Stephens*, 213 N.C. App. at 499.[1] Conflict between parents and their parenting coordinators is not "self-evident." *Id.* Rather, "the trial court must find sufficient evidence of a nexus between the change in circumstances and the welfare of the children." *Id.*

For example, in *Henderson*, this Court remanded a trial court's modification of custody where its findings "focus[ed] on the parents' role" in finding there was a substantial change in circumstances. *Henderson,* 278 N.C. App. at 182. The trial

---

[1] Interestingly, our Supreme Court signaled in *Durbin* that the effect of conflict between parents and their parenting coordinators on a child, may actually *aid* our Court's in determining whether there is a substantial change in circumstances. *See Durbin*, 918 S.E.2d at 840.

court's findings were inadequate where they did not "address the effect the parents' communication difficulties had on the minor child's welfare and" did not "discuss the effect the disagreements pertaining to the minor child's medical treatment had on her welfare." *Id.*

Based on the order before us on appeal, our review is not just "difficult" but impossible. *See Laprade* 253 N.C. App. at 302 ("It is not our role to do a review of all of the transcripts of all of the proceedings to find the information" one party favors.). This Court cannot ignore the absence of findings or infer the first necessary finding required in a trial court's mandatory fact-findings steps to modify a custody order. *See Davis*, 229 N.C. App. at 504 (demonstrating a trial court must first conclude a substantial change in circumstances has occurred to proceed with the remaining modification analysis). Similarly, our standard of review demands the same logical sequence where "evidence must support findings; findings must support conclusions; conclusions must support the judgment . . . . each link in the chain of reasoning must appear in the order itself" and "[w]here there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto." *Coble*, 300 N.C. at 714. Accordingly, we vacate and remand that part of the order and instruct the trial court to make appropriate factual findings and conclusions of law under *Shipman* before modifying custody. Further, because the trial court's order does not demonstrate the requirements of *Shipman* and our precedents, we likewise vacate and remand the trial court's modification of custody.

## 2. *Consideration of Reports*

When "parties' past domestic troubles and communication difficulties" have "already [been] considered" in previous orders, and no "findings of additional changes in circumstances or conditions" are made, there can be no present modification of a prior custody order. *Ford*, 170 N.C. App. at 96. "Therefore, when evaluating whether there has been a substantial change in circumstances, courts may only consider events which occurred after the entry of the previous order, unless the events were previously undisclosed to the court," *Woodring v. Woodring*, 227 N.C. App. 638, 645 (2013), the previous order was a consent order, *see Balawejder v. Balawejder*, 216 N.C. App. 301, 309 (2011), or the effect of the substantial change—even if occurring prior to entry of the order being modified—materializes after entry of the of the order being modified, *see Spoon v. Spoon*, 233 N.C. App. 38, 45 (2014).

Here, the trial court made findings of fact related to events that occurred prior to the entry of the previous consent order. Further, the trial court found these events, and the reports, which detailed them, were previously known to the parties. But this Court cannot determine how the trial court used these reports, or the events contained within them, where the order to modify child custody lacked findings related to what the substantial circumstance was, how it could have affected the child, and what the nexus between the change and effect was. To do so would impermissibly ask this Court to draw inferences outside the scope of its review. *See Coble*, 300 N.C. at 714 (1980) ("Where there is a gap, it cannot be determined on

appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.").  Because we cannot ascertain the reports' use, we cannot address parties' arguments on appeal.

## B. Motion for Sanctions and Attorney's Fees

On appeal, defendant argues the trial court erred in finding and concluding that defendant's motions for contempt were brought for an improper purpose.

> Our standard of review for Rule 11 sanctions is well established: The trial court's decision to impose or not to impose mandatory sanctions under . . . Rule 11(a) is reviewable de novo as a legal issue. An appellate court must determine whether the findings of fact of the trial court are supported by sufficient evidence, whether the conclusions of law are supported by the findings of fact, and whether the conclusions of law support the judgment. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under . . . Rule 11(a).

*Jonna v. Yaramada*, 273 N.C. App. 93, 108 (2020) (omissions in original) (cleaned up). Therefore, "we are strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *Id.* (cleaned up).

"Rule 11 permits the court to impose appropriate sanctions, including an order to pay attorney's fees to the opposing party, if a pleading or motion has no basis in law or fact or is interposed for an improper purpose such as harassment or delay."

*Overcash v. Blue Cross & Blue Shield of N.C.*, 94 N.C. App. 602, 617 (1989). Thus, "[a]ppellate review of sanctions under Rule 11 consists of a three-pronged analysis: (1) factual sufficiency, (2) legal sufficiency, and (3) improper purpose." *Yaramada*, 273 N.C. App. at 109 (cleaned up). "A violation of any one of these prongs requires the imposition of sanctions." *Id.* (cleaned up). Therefore, when the trial court concludes one prong has been violated, it does not need to address the others. *See Barham v. Barham*, 286 N.C. App. 764, 773–74 (2022) ("Because the trial court based its Rule 11 order on the legal sufficiency prong, we do not address the factual sufficiency nor the improper purpose prongs.").

"Our Courts have held that the improper purpose prong of Rule 11 is separate and distinct from the factual and legal sufficiency requirements." *Kohler Co. v. McIvor*, 177 N.C. App. 396, 404 (2006) (cleaned up). Therefore, "even if a paper is well grounded in fact and law, it may still violate Rule 11 if it is served or filed for an improper purpose." *Bossian v. Chica*, 297 N.C. App. 1, 18 (2024) (citation omitted).

An improper purpose is

> any purpose other than one to vindicate rights or to put claims to a proper test, . . . [and] may be inferred from the alleged offender's objective behavior. Accordingly, under Rule 11, an objective standard is used to determine whether a paper has been interposed for an improper purpose, with the burden on the movant to prove such improper purpose. The movant's subjective belief that a paper has been filed for an improper purpose as well as whether the offending conduct did, in fact, harass movant is immaterial to the issue of whether the alleged offender's conduct is sanctionable. Improper purpose may, however,

be inferred from the service or filing of excessive, successive, or repetitive papers or from continuing to press an obviously meritless claim after being specifically advised of its meritlessness by a judge or magistrate.

*Id.* at 18–19 (cleaned up). "For example, in *Ward*, this Court upheld sanctions under Rule 11 where the trial court had 'noted that [the] plaintiff has filed at least forty-two actions in the past six years including a previous action alleging conduct identical to the instant case.'" *Id.* at 19 (quoting *Ward v. Jett Props., LLC*, 191 N.C. App. 605, 606 (2008)).

In the present case, the trial court made the following factual findings:

15. The Court next heard Defendant's motions to find Plaintiff in criminal contempt filed December 13, 2023 and an amended version on January 10, 2024. The Court heard the following in support of Defendant's motions:

    a. Testimony of Defendant;

    b. Defendant's verified motions and 39-page supporting documents;

    c. A printed record of emails between the parties since the March 5, 2023 order, entered without objection as Plaintiff's Exhibit 2.

. . . .

25. Despite the above recommendation and consent order agreeing to appoint a parenting coordinator to aid with communication and decision-making, Defendant refused to utilize a parenting coordinator and continuously emailed Plaintiff questions about her parenting style and fitness as a parent. Defendant's January 10, 2024 motion for contempt claims that Plaintiff "refused to have complete and thorough conversations with Defendant regarding co-parenting and the minor child despite numerous efforts by

25

the Defendant" and that Plaintiff failed to respond within 24 hours to Defendant's questions regarding the minor child on 26 occasions. Examples of the questions that Plaintiff failed to respond to that were cited in Defendant's motion for contempt include:

> a. "Are you stating that you believe it's okay to lie in some circumstances but not in others?"
>
> b. "Oh really? So if she decides to wear something inappropriate for the weather or her age you will allow her to wear it?"
>
> c. "Can you please tell me why you think it's important for her to occasionally experience a dentist appointment with just one parent?"
>
> d. "Have you done any research before making this decision?"
>
> e. An email attaching a seven-page article about co-parenting states, "I'm requesting that you take that document and notate what you disagree with in there and send it back to me for my review."

. . . .

29. From approximately October 20, 2023 to November 3, 2023, the Defendant sent numerous emails questioning Plaintiff about her decision to have the child administered the flu vaccine despite the prior order directing that "unless otherwise agreed by the parties, the minor child will receive any and all and vaccines and preventative care recommended by the child's primary care provider." Plaintiff ultimately told Defendant on November 4, 2024 "We can't engage in this anymore. Let's wait for the parenting coordinator." Defendant cited this as a violation of the 24 hour response provision in his contempt motion.

30. Defendant informed the child that she could get her ears pierced in September of 2023. On September 18, 2023, the Defendant emailed Plaintiff informing her about an

appointment the next day to pierce the child's ears. Plaintiff responded that she believed the child was too young and did not agree with the decision to pierce her ears, and Defendant promising the child this without consulting Plaintiff was a violation of the custody order. Defendant asked the Plaintiff to state her reasons for objecting to the ear piercing, and Plaintiff responded with a list of several reasons, including the minor child was too young to manage the responsibilities. Defendant responded to each of Plaintiff's concerns and then indicated he had appropriately addressed her concerns and was therefore proceeding with the ear piercing. Defendant also asked "Can you point to where it says on our consent order that she can't get her ears pierced?" Defendant cites Plaintiff's failure to respond to him in his motion for contempt as a violation of the 24-hour response provision.

31. On or about April 20, 2023 the Defendant went to have lunch with the minor child at school for his birthday. Defendant emailed the Plaintiff during his lunch that the child stated she had made him a birthday card and Plaintiff had taken the card away. Minutes later, Defendant emailed the Plaintiff and said the "truth came out," and followed up with another email stating the child admitted she had not made Defendant a birthday card and Plaintiff had not taken the card away. Defendant then demanded of Plaintiff, "What do you think we should do about this lying?" which started a days-long back and forth with Defendant demanding that Plaintiff outline what punishment she would give the child for lying about his birthday card and questioning Plaintiff about her discipline. Defendant cites Plaintiff's failure to respond to him in his motion for contempt as a violation of the 24-hour response provision.

Here, defendant has continued to pursue successive, legally meritless allegations against plaintiff. Specifically, our review of the record reveals, and the trial court found, that defendant alleged twenty-six violations of the parties' custody

27

order based on incidents where plaintiff failed to respond to defendant's questions regarding the minor child within twenty-four hours, and attached thirty-nine pages of related documents that revealed defendant asked plaintiff questions like: "Have you done any research before making this decision?" and requesting plaintiff to take a seven-page article about co-parenting, annotate it, and describe to defendant what she disagreed with in the article. Ultimately, the trial court concluded as such and stated defendant brought a frivolous motion, and the motion was brought "for the Improper purpose of harassing Plaintiff and needlessly increasing the cost of litigation for Plaintiff." The trial court's conclusion that defendant's motion for modification of custody was brought for an improper purpose was supported by the trial court's findings, that in turn were supported by substantial evidence. *See Lawing*, 289 N.C. App. at 337. Thus, we affirm the trial court's findings and determination to impose Rule 11 sanctions.

However, the trial court is also required to "explain why [a] chosen sanction is appropriate and also why the amount of such is appropriate," when imposing Rule 11 sanctions. *Dalenko v. Collier*, 191 N.C. App. 713, 723 (2008). And "[w]hen reviewing the amount or type of sanctions imposed under Rule 11 we apply an abuse of discretion standard." *O'Neal v. O'Neal*, 226 N.C. App. 71, 79 (2013).

This requirement can be sufficiently satisfied where the trial court's factual findings demonstrate that "the amount of attorney's fees awarded to defendant was appropriate based upon the amount of work required by the case and the experience

of defendant's attorneys." *Dalenko,* 191 N.C. App. at 723; *see also Barrington v. Dyer*, 282 N.C. App. 404, 411 (2022). In other words, "[a] trial court, in making an award of attorneys' fees pursuant to Rule 11, must explain why the particular award is appropriate and how the court arrived at the particular amount." *O'Neal*, 226 N.C. App. at 79 (cleaned up).

Here, the trial court found:

> Attorney Margaret Megerian, counsel for Plaintiff, has submitted an affidavit of attorney fees reflecting $7,085.50 in attorney fees and costs attributable to the pending motions. This amount is reasonable, and it is appropriate to order the Defendant to pay these fees and costs as set forth herein.

As discussed previously, although the trial court explained why sanctions were appropriate—the trial court failed to articulate how it decided to award attorney's fees in the amount of $7,085.50. The trial court stated its reliance an affidavit of plaintiff's trial counsel but failed to make findings about its contents to support an award of attorney's fees, and failed to specify which motion, or motions, the fees and costs were attributable to.

Further, the record on appeal does not contain this affidavit, nor any discussion of the breakdown of these fees. Thus, while we affirm the trial court's imposition of Rule 11 sanctions, we remand for further factual findings "to explain why the chosen sanction is appropriate and also why the amount of such is appropriate." *Collier*, 191 N.C. App. at 723 (2008). On remand, the trial court may, again, rely on plaintiff's

trial counsel affidavit, but must make the required findings of fact.  *E.g. O'Neal*, 226 N.C. App. at 79.

Defendant also argues the trial court erred in awarding attorney's fees under subsection 50-13.6; however, defendant fails to present any legal argument or citations to authority other than the standard of review to support this argument. *See* N.C.G.S. § 50-13.6 (2023).  Accordingly, these issues are abandoned and any relevant findings are binding on appeal.  *See* N.C. R. App. P. 28(b)(6) (2023) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

## V.  Conclusion

A substantial change in circumstances affecting the welfare of the children is required before a trial court may modify an existing child custody order. Thus, we vacate and remand that part of the order and instruct the trial court to make appropriate factual findings and conclusions of law under *Shipman* before modifying custody.  Further, because the trial court's order does not demonstrate the requirements our precedent demands, we likewise vacate and remand the trial court's modification of custody.  We affirm the trial court's findings and conclusion that defendant's motion was brought for an improper purpose, but vacate and remand the award of attorney's fees for further factual findings.

VACATED IN PART, AFFIRMED IN PART, AND REMANDED.

Judge TYSON concurs.

30

Judge STADING concurs in result only by separate opinion.

Report per Rule 30(e).

No. COA24-917 – *Glover v. Trogdon*

STADING, Judge, concurs in the result only and writes separately.

For the reasons detailed below, I would hold there is sufficient record evidence to support the trial court's findings of fact and conclusions of law with respect to custody modification. Further, in accordance with precedent, I would address whether the trial court impermissibly delegated its judicial authority to determine visitation with the minor child.

Defendant argues that the trial court erred when concluding there existed a substantial change in circumstances warranting modification of the custody order. In support of this position, Defendant cites as favorable the holding in *Durbin v. Durbin*, 292 N.C. App. 381, 898 S.E.2d 65 (2024). However, our Supreme Court recently overturned this Court's holding. *Durbin v. Durbin*, __ N.C. __, __, 918 S.E.2d 832, 841 (2025).

In *Durbin*, the parents entered a consent order in 2016 that required shared joint legal and physical custody. *Id.* at __, 918 S.E.2d at 834. The consent order also obligated the parents to share information about medication, medical emergencies, activities, appointments, and scheduling. *Id.* The mother filed a motion to modify the child custody provision of the consent order in October 2020. *Id.* "Based upon an agreement by the parties, the trial court entered an order modifying the custody agreement (2020 Order)." *Id.* The relevant provisions from the 2020 order included:

> [T]he modified order required appointment of a parenting coordinator to deescalate the conflict between the parents. *See* N.C.G.S. § 50-91 (2023) (allowing the appointment of a parenting coordinator). The order gave the parenting coordinator broad authority to resolve disputes between the parties and make decisions regarding the children, including determining transition pickup and delivery, participation in child care, bedtime, diet, clothing, recreation, and, most relevant to this case, health care management.

*Id.* at ___, 918 S.E.2d at 834–35.

In October 2021, the mother filed a motion to modify the 2020 child custody order, asserting a substantial change in circumstances due to the father's failure to cooperate with the parenting coordinator. *Id.* at ___, 918 S.E.2d at 835. The trial court ultimately "concluded that the 'findings constitute[d] a substantial change in circumstances warranting the entry of a temporary custody order' modifying the 2020 Order." *Id.* (alteration in original). This temporary custody order granted the mother "primary physical custody and final decision-making authority on major decisions when the parties [were] unable to reach mutual agreement." *Id.* The temporary custody order also "required the parents to comply with the [parenting coordinator's] directive on medication for the children," and to not "discuss the court proceedings with the children." *Id.* (alteration in original). Thereafter, the trial court "entered an order making the prior modification to the custody order permanent on 8 July 2022 (Modified Custody Order)." *Id.* at ___, 918 S.E.2d at 836. The modified custody order "concluded that the findings 'constitute[d] a substantial change in circumstances'

warranting modification to the terms of the 2020 Order." *Id.* The father appealed from the modified custody order, asserting, the trial court erroneously concluded there was a substantial change in circumstances affecting the minor children. *Id.* After consideration, the Court of Appeals "reversed the Modified Custody Order, holding that the findings of fact did not support the conclusion that there was a substantial change in circumstances affecting the welfare of the children." *Id.*

Thereafter, the North Carolina Supreme Court compared the modified custody order and temporary custody order to the previous 2020 order and noted "a substantial change in circumstances occurred affecting the welfare of the[ ] children." *Id.* at __, 918 S.E.2d at 838. The Supreme Court noted the findings throughout the three orders demonstrated "an increasing level of conflict created by the Father about many aspects of the children's lives but especially the children's medical needs and therapy appointments." *Id.* Ultimately, the Supreme Court concluded that the "Court of Appeals erred when it held that the modification was not supported by a substantial change in circumstance affecting the child's welfare." *Id.* at __, 918 S.E.2d at 841.

Findings of Fact Nos. 23–25 and 27–38 adequately support Conclusions of Law 3–5, and the trial court's order properly employs the language of the test set forth in

*Shipman v. Shipman*, 357 N.C. 471, 473–75, 586 S.E.2d 250, 252–54 (2023);[2] *see also Lang v. Lang*, 197 N.C. App. 746, 748, 678 S.E.2d 395, 397 (2009) (alterations in original) ("When determining whether the findings [in an order modifying child custody] are adequate [to support its conclusions], this Court examines the entire order. The trial court is not constrained to using certain and specific buzz words or phrases in its order."). Additionally, Findings of Fact Nos. 23–25 and 27–30 demonstrate a substantial change in circumstances; Findings of Fact Nos. 32, 34, and 35 demonstrate the impact the change has had on the minor child; and Finding of Fact No. 37 notes that it is in the best interest of the child to award sole legal and physical custody to Plaintiff. Here, the trial court did not only find Defendant was unwilling to cooperate with the parenting coordinator as in *Durbin*. It also found Defendant: "continuously emailed Plaintiff questions about her parenting style and fitness as a parent"; based his motion for contempt on the fact that Plaintiff did not respond to several inquiries within twenty-four hours despite the consent order requiring "a parenting coordinator aid in communication and decision-making"; demonstrated an "unwillingness or inability to communicate in a reasonable manner

---

[2] The *Shipman* test provides: "The trial court's examination of whether to modify an existing child custody order is twofold. The trial court must determine whether there was a change in circumstances and then must examine whether such a change affected the minor child. . . . If . . . the trial court determines that there has been a substantial change in circumstances and that the change affected the welfare of the child, the court must then examine whether a change in custody is in the child's best interests. If the trial court concludes that modification is in the child's best interests, only then may the court order a modification of the original custody order." 357 N.C. at 474, 586 S.E.2d at 253.

with Plaintiff" concerning the minor child's needs; and refused to utilize the parenting coordinator for medical and parenting decisions. Considering our Supreme Court's holding in *Durbin*, the trial court's order properly modified the existing child custody order. Even if Findings of Fact Nos. 22 and 26 are erroneous as Defendant contends, they are immaterial to the substantial change in circumstances analysis since it may rest upon Findings of Fact Nos. 23–25 and 27–38. *See Woodring v. Woodring*, 227 N.C. App. 638, 645, 745 S.E.2d 13, 20 (2013); *see also Durbin*, ___ N.C. at ___, 918 S.E.2d at 840.

Defendant also maintains the trial court improperly delegated its judicial authority by granting Plaintiff discretion over Defendant's visitation with the minor child. This concern was not addressed in the majority opinion. In Finding of Fact No. 38, the trial court's order stated:

> Based on the evidence presented and the findings herein, the Defendant is not a fit and proper person to exercise custody of the minor child and he has acted in a manner inconsistent with his right to custody. It is in the child's best interest that Defendant's visitation be left at the discretion of the Plaintiff.

According to *In re Custody of Stancill*, the court may not delegate visitation to the discretion of one parent. 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971) ("When the question of visitation rights of a parent arises, the court should determine from the evidence presented whether the parent by some conduct has forfeited the right or whether the exercise of the right would be detrimental to the best interest

5

and welfare of the child. If the court finds that the parent has by conduct forfeited the right or if the court finds that the exercise of the right would be detrimental to the best interest and welfare of the child, the court may, in its discretion, deny a parent the right of visitation with, or access to, his or her child; but the court may not delegate this authority to the custodian.").

Based on the foregoing, I would vacate the trial court's order to the extent it delegates visitation authority. I would therefore remand to the trial court for further proceedings on this basis alone. Contrary to the majority opinion's conclusion, I would hold the trial court's findings of fact adequately support its substantial change in circumstances determination. Accordingly, remand for the purpose of additional findings of fact is unnecessary.